Seth Gold (SBN 163220)
seth.gold@klgates.com
K&L Gates LLP
10100 Santa Monica Blvd., Eighth Floor
Los Angeles, CA 90067
T: (310) 552-5000
F: (310) 552-5001

Peter Soskin (SBN 280347) peter.soskin@klgates.com
K&L Gates LLP
4 Embarcadero Center Ste. 1200
San Francisco, CA 94111
T: (415) 882-8200
F: (415) 882-8220

Attorneys for Plaintiff Jane Doe

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Jane Doe** | Case No. CV 14-9788 PSG (SS) |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** |
| vs. | |
| **David K. Elam II,** | Date: January 8, 2018 |
| Defendant. | Time: 2:30pm |
| | Ctrm: 350 West 1st St., Crtm. 6A |
| | Pre-Trial Conf: January 8, 2018 |
| | Trial Date: January 30, 2018 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................1

II.   L.R.16-4.1 CLAIMS AND DEFENSES ....................................2

      (a)   Plaintiff's Claims and Defenses ....................................2

      (b)   Elements Required to Establish Each of Plaintiff's Claim .............3

      (c)   Key Evidence Supporting Each of  Plaintiff's Claims ...................5

      (d)   Summary of Affirmative Defenses Defendant has Pleaded .........27

      (e)   Elements of Affirmative Defenses Defendant has Pleaded ..........28

      (f)   Key Evidence Relied on in Opposition to Each Affirmative Defense ...................................................30

      (h)   Anticipated Evidentiary Issues ....................................35

      (i)   Anticipated Issues of Law ..........................................36

            1.   Damages .......................................................36

            2.   Legal Procedure & Sanctions if Defendant Re-appears ......40

III.  L.R. 16-4.2: [ABROGATED] ................................................42

IV.   L.R. 16-4.3: BIFURCATION OF ISSUES ..............................42

V.    L.R. 16-4.4: JURY TRIAL ................................................42

VI.   L.R. 16-4.5: ATTORNEYS' FEES .....................................42

VII.  L.R. 16-4.6: ABANDONMENT OF ISSUES ..........................42

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action S.A. v. Marc Rich & Co.*,
   951 F.2d 504 (2nd Cir. 1991) ................................................................. 38

*Ahern v. Dillenback*,
   1 Cal.App.4th 36 (1991) ........................................................................ 4

*BMW of N. AM., Inc. v. Gore*,
   517 U.S. 559 (1996) .............................................................................. 39

*Brantley v. Boyd*,
   No. C 07–6139 MMC, 2013 WL 3766911 (N.D. Cal. 2013) ................. 37

*Condon v. Condon*, No. CV 07-4985-JFW (SSX), 2008 WL 11338437
   (C.D. Cal. June 6, 2008) ....................................................................... 40

*Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc.*,
   155 Cal.App.3d 381 (Ct. App. 1984) ................................................... 39

*Diaz v. Oakland Tribune*,
   139 Cal.App.3d 118 (1983) ............................................................ 36, 37

*Downey Savings & Loan Assn. v. Ohio Casualty Ins. Co.*,
   189 Cal.App.3d 1072 (2d Dist. Cal. 1987) ........................................... 39

*Drust v. Drust*,
   113 Cal.App.3d 1 (1980) ...................................................................... 30

*Fair Hous. of Marin v. Combs*,
   285 F.3d 899 (9th Cir. 2002) ................................................................ 40

*Federal Trade Comm'n v. Medicor*,
   LLC, 217 F.Supp.2d 1048 (C.D. Cal. 2002) ........................................ 40

*Harrison v. Adams*,
   20 Cal.2d 646 (1942) ............................................................................ 29

ii

*Heine v. Vilsack,*
   No. 1:12-CV-01992-AWI, 2014 WL 7447619 (E.D. Cal. Dec. 31,
   2014) ................................................................................................. 5

*Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.,*
   129 Cal.App.4th 1228 (2005) ........................................................ 4

*James v. Frame,*
   6 F.3d 307, 310 (9th Cir. 1993) .................................................. 36

*JBR, Inc. v. Cafe Don Paco, Inc.,*
   No. 12-CV-02377 NC, 2014 WL 5034640 (N.D. Cal. Aug. 25, 2014) ................. 41

*Knight v. Jewett*
   (1992) 3 Cal.App.4th 296 ............................................................ 29

*Mock v. Mich. Millers Mut. Ins. Co.,*
   4 Cal.App.4th 306 (1992) ............................................................ 38

*Neal v. Farmer's Ins. Exchange*
   21 Cal.3d 910 (1978) ................................................................... 38

*Newby v. Alto Riviera Apartments,*
   60 Cal.App.3d 288 (1976) ............................................................ 4

*Philip Morris USA, Inc. v. Castworld Prod., Inc.,*
   219 F.R.D. 494 (C.D. Cal. 2003).................................................. 35

*Powell v. Blackrock Asset Mgmt., LLC,*
   No. SACV 11-0517-JST, 2011 WL 4551450 (C.D. Cal. Sept. 30,
   2011) ............................................................................................. 36

*Rode v. Credio,*
   No. CV-14-02354-PHX-SRB, 2016 WL 5339682 (D. Ariz. Aug. 3,
   2016) ............................................................................................. 37

*Shulman v. Grp. W Prods., Inc.,*
   18 Cal. 4th 200 (1998), *as modified on denial of reh'g* (July 29, 1998) .................. 3

*Smith v. Pacific Bell Tel. Co., Inc.,*
   662 F.Supp.2d 1199 (C.D. Cal. 2009)......................................... 40

*Taylor v. Frank,*
   No. CIV. 09-00002 JMS, 2011 WL 2118270 (D. Haw. May 2, 2011).................. 37

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

*Taylor v. Superior Court*,
   24 Cal. 3d 890 (1979) ......................................................................... 38

*TCI Grp. Life Ins. Plan v. Knoebber*,
   244 F.3d 691 (9th Cir. 2001) .............................................................. 41

*TeleVideo Systems, Inc. v. Heidenthal*,
   826 F.2d 915 (9th Cir. 1987) .............................................................. 35

*Tillamook County Smoker, Inc. v. Tillamook County Creamery Ass'n*,
   465 F.3d 1102 (9th Cir. 2006) .......................................................... 6, 40

*Winterrowd v. David Freedman and Co., Inc.*,
   724 F.2d 823 (9th Cir. 1984) .............................................................. 39

**Statutes**

17 U.S.C. § 107 ......................................................................................... 30

17 U.S.C. § 504 ........................................................................................... 3

17 U.S.C. § 505 ......................................................................................... 42

Cal. C.C.P. § 431.70 ................................................................................. 29

Cal. Civ. Code §1708.7 ....................................................................... 2, 5, 22

Cal. Civ Code § 1714(a) ............................................................................. 4

Cal. Civ. Code § 3294 ............................................................................... 38

Cal. Civ. Code § 3294(c)(1) ...................................................................... 38

Cal. Civ. Code § 3294(c)(2) ...................................................................... 38

Cal. Civ. Code § 3527 ............................................................................... 28

Cal. Civ. Proc. Code § 312 ....................................................................... 28

Cal. Penal Code §§ 528.5(a)-(e) ................................................................. 3

**Other Authorities**

CACI 405 ................................................................................................. 30

CACI 408 ................................................................................................. 29

CACI 454 ................................................................................................28

CACI 1620 ...............................................................................................5

CACI 3900 and 3905A ..........................................................................29

CACI No. 1220 .........................................................................................4

CACI No. 1604 .........................................................................................4

CACI No. VF-1800....................................................................................3

Fed. R. Civ. Proc. 36(a) .........................................................................40

Fed. R. Civ. 55(b)(2) ...............................................................................35

L.R. 16-4 ...................................................................................................1

L. R. 55-2 ...........................................................................................35, 40

Ninth Circuit Manual of Model Civil Jury Instructions §17.22 ...................................30

Ninth Circuit Manual of Model Civil Jury Instructions § 17.4 and 17.32 ...................3

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Plaintiff Jane Doe ("Plaintiff") hereby submits her memorandum of contentions of fact and law in her action against Defendant David K. Elam, II ("Defendant").

## I.    **INTRODUCTION**

This action arises out of Defendant's malicious and carefully calculated revenge porn campaign designed to terrify, harass, and cause Plaintiff to want to kill herself. In fact, just prior to embarking upon his campaign, Defendant made the following express threat to Plaintiff:

> *"It would take an act of God for you to make it through*
> *[ ] school without killing yourself after what I do to*
> *you."*

Defendant's campaign included many separate courses of conduct designed to achieve his goal.  One aspect of Defendant's campaign included his creation of online profiles on dating websites in which he impersonated Plaintiff and published sexually explicit photographs of her.  On these sites, Defendant posted Plaintiff's personal contact information and home address, and from such fake accounts engaged in communications with strangers while pretending to be Plaintiff in order to solicit and encourage those strangers to visit Plaintiff's home with the expectation of sexual relations. In another part of his campaign, Defendant uploaded to various pornographic websites private sexually explicit images and videos Plaintiff had entrusted him with over the course of their relationship.  In another aspect of his campaign, Defendant sent to Plaintiff's mother and others spoofed emails that were in the name of people within Plaintiff's professional and social networks, and in those emails delivered links to sexually explicit pictures of Plaintiff.  Through these and other actions, Defendant altered the course of Plaintiff's life, causing her to suffer trauma, humiliation, and severe emotional distress.

Plaintiff filed suit in December 2014, alleging a number of tort claims and a claim for copyright infringement.  In accordance with L.R. 16-4, Plaintiff hereby provides her Memorandum of Contentions of Fact and Law.  Plaintiff reserves the

right to supplement this Memorandum as necessary in light of any potential or actual pending motion practice.

## II.    L.R.16-4.1 CLAIMS AND DEFENSES

Defendant abandoned this litigation over a year ago and has ever since attempted to evade not only Plaintiff's counsel, but the Court itself.  As set forth more fully in Plaintiff's Motion to Strike and for Entry of Default (ECF No. 123), Plaintiff failed to provide the Court with his updated contact information after his attorneys withdrew in August 2016.  Since that time, Plaintiff has tried to engage Defendant in the litigation, using various methods to contact him, but Defendant has failed and refused to participate in this litigation, as required.  Specifically, Defendant has failed to respond to discovery requests, failed to meet and confer on discovery requests and motions, failed to respond to motions, failed to comply with a discovery order, and also failed to comply with a specific Court order requiring him to provide his contact information so the Court and Plaintiff can proceed with this matter on the merits.

Plaintiff anticipates that default will be entered against Defendant pursuant to her motion that is scheduled to be heard on January 8, 2018, but submits this memorandum to satisfy her obligations.

### (a)    *Plaintiff's Claims and Defenses*

Plaintiff has pled and intends to pursue the following claims:

**Claim 1:** Defendant Infringed upon Plaintiff's Protected Copyrights.

**Claim 2:** Defendant Impersonated Plaintiff Online with Intent to Cause Harm.

**Claim 3:** Defendant is Liable for the Tort of Intrusion.

**Claim 4:** Defendant Intentionally Inflicted Severe Emotional Distress.

**Claim 5:** Defendant is Liable for Negligence

**Claim 6:** Defendant Is Liable for Negligent Infliction of Emotional Distress[1]

---

[1] Because negligent infliction of emotional distress is not an independent tort but is encompassed by the tort of negligence, Plaintiff's claim for negligent infliction of emotional distress is subsumed into her negligence claim, and to the extent required by this Court, Plaintiff therefore abandons Claim 6 as a separate claim for negligent infliction of emotional distress as discussed in the appropriate section of this memorandum.

**Claim 7:** Defendant Committed Stalking Under Cal. Civ. Code §1708.7.

    **(b)**     *Elements Required to Establish Each of Plaintiff's Claim*

        <u>**Claim 1:  Elements Required to Establish Defendant Infringed**</u>
        <u>**Plaintiff's Copyrights**</u>

1)     Plaintiff's ownership of a valid copyright;

2)     Defendant's copying of protected elements of the copyrighted material;

3)     That the copyright owner registered its copyright before commencement of the infringement (for statutory damages under 17 U.S.C. § 504); or

4)     That the Plaintiff can prove actual damages suffered as a result of the infringement and/or profits of Defendant attributable to the infringement.

*See* Ninth Circuit Manual of Model Civil Jury Instructions § 17.4 and 17.32 (2007); 17 U.S.C. § 504.

        <u>**Claim 2:  Elements Required to Establish Defendant Impersonated**</u>
        <u>**Plaintiff Online With Intent to Cause Harm**</u>

1)     Defendant knowingly and without consent credibly impersonated another actual person through or on an internet web site or by other electronic means;

2)     For the purpose of harming, intimidating, or threatening Plaintiff;

3)     And that the impersonation caused Plaintiff to suffer damage or loss.

Cal. Penal Code §§ 528.5(a)-(e).

        <u>**Claim 3:  Elements Required to Establish that Defendant is Liable**</u>
        <u>**for the Tort of Intrustion**</u>

1)     Intrusion into a private place, conversation or matter;

2)     In a manner highly offensive to a reasonable person.

     California Civil Jury Instruction ("CACI") CACI No. VF-1800; *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998), *as modified on denial of reh'g* (July 29, 1998).

---

3

## **Claim 4:  Elements Required to Establish that Defendant Is Liable for Intentionally Inflicting Emotional Distress**

1)  Outrageous conduct by the defendant.

    a)  Behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress.

2)  The defendant's intention of causing or reckless disregard of the probability of causing emotional distress;

3)  Plaintiff's suffering of severe or extreme emotional distress;

4)  Actual and proximate causation of the emotional distress by Defendant's outrageous conduct.

The authority for the general elements is found at CACI No. 1604; *Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal.App.4th 1228, 1259 (2005).

The authority for further defining outrageous conduct is found at *Newby v. Alto Riviera Apartments*, 60 Cal.App.3d 288, 296 (1976) (*disapproved of on other grounds by Marina Point, Ltd. v. Wolfson*, 30 Cal. 3d 721 (1982)).

## **Claim 5:  Elements Required to Establish that Defendant Is Liable for Negligence**

1)  A legal duty to use due care;

2)  A breach of that duty Plaintiff's suffering of severe or extreme emotional distress;

3)  A reasonably close causal connection between the breach and Plaintiff's resulting injuries and /or that Defendant's breach was a substantial factor in causing Plaintiff to suffer severe emotional distress;

4

4)    Loss or damage to the plaintiff, including but not limited to that Plaintiff suffered severe emotional distress.

CACI No. 1220. *Ahern v. Dillenback*, 1 Cal.App.4th 36, 42 (1991); *see* Cal. Civ Code § 1714(a) (general negligence);

CACI 1620; *Heine v. Vilsack*, No. 1:12-CV-01992-AWI, 2014 WL 7447619, at *5 (E.D. Cal. Dec. 31, 2014)(citing *Butler–Rupp v. Lourdeaux*, 134 Cal.App.4th 1220, 1226 n. 1 (2005)) (negligent infliction of emotional distress).

### Claim 6:  Elements Required to Establish Defendant Negligently Inflicted Emotional Distress

*See* footnote 1 and Claim 5, above.

### Claim 7:  Elements Required to Establish Defendant Committed Stalking Under Cal. Civ. Code § 1708.7

1)    Defendant engaged in conduct intended to harass Plaintiff;

2)    Defendant's conduct caused Plaintiff to reasonably fear for her safety or reasonably suffer substantial emotional distress;

3)    As a part of Defendant's conduct, he made a credible threat either:

   a)    to intentionally place Plaintiff in reasonable fear for her safety;

   b)    or that was in reckless disregard for Plaintiff's safety;

4)    And that Defendant persisted even after Plaintiff clearly and definitively demanded that Defendant cease and abate his pattern of conduct.

   Cal. Civ. Code §1708.7

(c)  *Key Evidence Supporting Each of  Plaintiff's Claims*

### Claim 1:  Key Evidence Supporting Plaintiff's Copyright Infringement Claim

1)    Key evidence establishing Element 1: Ownership of the copyrights:

   a)    Testimony of Plaintiff

   b)    Copyright registration documents for registration number: VAu 1-146-596, Dated June 11, 2013

5

c)   Copyright registration documents for registration number: VAu 1-138-755, Date June 30, 2013

2)   Key evidence establishing Element 2: Defendant copied and distributed protected elements of copyrighted photographs of Plaintiff:

a)   Testimony of Plaintiff, including that she provided only Defendant the copyrighted images and therefore they could only have been copied, duplicated, distributed etc. by Defendant's acts when they appeared on the Internet

b)   Testimony of Plaintiff's mother, including that Defendant made a number of admissions regarding his copying of certain of Plaintiff's copyrighted material

c)   Defendant's Answer to the Complaint containing assertions of the Fifth Amendment privilege

d)   Defendant's response to Plaintiff's Requests for Production containing assertions of the Fifth Amendment privilege

e)   Requests for Admission Served by Plaintiff to Defendant, Dated August 8, 2017 regarding Defendant copying Plaintiff's copyrighted material by at least publishing them on various websites on the Internet[2]

f)   Screenshots of text messages between Plaintiff and Defendant on or about May 8, 2013 in which Defendant informs Plaintiff of his intention to distribute the copyrighted material to "[everybody]," states "I'm an asshole. Sucks for you," and then sends Plaintiff one of the copyrighted images

g)   Word document containing a list of websites of which the copyrighted materials were uploaded, created by Plaintiff's mother, undated

---

[2] Hereafter, "Requests for Admission Served by Plaintiff to Defendant, Dated August 8, 2017" refers to facts "deemed admitted" by Defendant's decision to not provide responses to Plaintiff's Requests for Admission ("RFAs"). *Tillamook County Smoker, Inc. v. Tillamook County Creamery Ass'n*, 465 F.3d 1102, 1112 (9th Cir. 2006).

h)     Excel spreadsheet reflecting websites upon which Plaintiff's copyrighted and other material appeared, undated

i)      Screenshots of a dating profile from the dating website "OKCupid" containing at least some of Plaintiff's copyrighted material

j)      Screenshots of spoofed emails from website "AddThis": from Plaintiff's classmate to Plaintiff containing forwarded email sent to Plaintiff's classmate (May 10, 2013) and identifying a representative of Plaintiff's university as the sender; sent to Plaintiff's mother and identifying a classmate of Plaintiff as the sender (May 11, 2013)

k)     Screenshots reflecting that Plaintiff's copyrighted photographs were published on various websites on the Internet:  "xHamster" (June 7, 2013); "xHamster" (June 9, 2013); Facebook Profile attributed to someone in Plaintiff's social network; screenshot of a Google Alert received by Plaintiff referring to "The Dirty," (June 7, 2013); screenshots from "The Dirty" (various days in June, 2013); screenshot from "MyEx" (June 29, 2013); screenshot from "Tumblr" (August 14, 2013); screenshot from "Motherless" (August 2, 2013); screenshot from "Adult Space" (July 15 and 16, 2013); screenshot from "You Got Posted" (June 25, 2013); screenshot from "HardSexTube" (May 14, 2013)

l)      Screenshot of search results of a Google web search for websites using Plaintiff's name and university as search terms dated June 10, 2013

m)     Testimony of Defendant[3]

**Claim 2:  Key Evidence Supporting Plaintiff's Claim that Defendant Impersonated Plaintiff Online With Intent to Cause Harm**

For this claim, Plaintiff  intends to advance two independent factual bases to support Defendant's liability on this claim: (A) Defendant impersonated *Plaintiff* in

---

[3] Throughout this brief, Plaintiff lists Defendant as a witness even tough he likely will not appear.  Plaintiff includes Defendant to preserve her rights.

order to cause her harm, and (B)Defendant impersonated *others* in order to cause Plaintiff harm.

1)      Key evidence establishing element 1: Defendant impersonated Plaintiff.

       *Key evidence under theory (A), that Defendant impersonated **Plaintiff**:*

       a)     Testimony of Plaintiff

       b)     Testimony of Defendant

       c)     Defendant's Answer to the Complaint containing assertions of the Fifth Amendment privilege

       d)     Defendant's response to Plaintiff's Requests for Production containing assertions of the Fifth Amendment privilege

       e)     Recording of phone call between Plaintiff and Defendant taken on or about May 8, 2013, in which Defendant made various threats to Plaintiff

       f)     Screenshot of text messages between Plaintiff and Defendant on or about May 8, 2013 in which Defendant taunts Plaintiff with the fact that he possesses the sexually explicit materials and sends her one of the pictures after implying he was going to use the materials to ruin her life

       g)     Requests for Admission Served by Plaintiff to Defendant, Dated August 8, 2017 regarding Defendant's creation of profiles impersonating Plaintiff

       h)     Screenshots reflecting that Plaintiff's sexually explicit and other photographs were used on various websites on the Internet in connection with profiles created in her name: "xHamster" (June 7, 2013); "xHamster" (June 9, 2013); "OKCupid"; screenshot from "Adult Space" (July 15 and 16, 2013)

       i)     Screenshot of text messages that Plaintiff received from "Andrew" on May 9, 2013

       j)     Screenshots of text messages that Plaintiff received from various individuals in connection with fake profiles created in her name:

"Devon" (May 9, 2013); "Emmanuel" (May 9, 2013); "Harold" (May 9, 2013); "Jim" (May 9, 2013); "Nick" (May 9, 2013); "Moses" (May 9, 2013); "Patrick" (May 9, 2013); "Paul" (May 9 or 10, 2013); unknown person with phone number (818) 808… (May 9, 2013); unknown person with phone number (714) 872-1… (May 9, 2013); unknown person with phone number (857) 998-1… (May 9, 2013); unknown person with phone number (714) 273-8… (May 9, 2013); "Will" (May 9, 2013); "Victor" referring to the website: "xHamster" (May 10, 2013)

2) Key evidence under theory (B), that Defendant impersonated **others**, including through spoofed emails:

a) Testimony of Plaintiff, including that her school administration brought to her attention that someone had impersonated the former dean of the school through a spoofed email account and sent emails to classmates containing the links to the sexually explicit photographs and videos of Plaintiff

b) Testimony of Defendant regarding his sending emails on behalf of others using "Add This" to impersonate them

c) Testimony of Plaintiff's mother, including that she received an email with a link to the sexually explicit material that had been sent from a spoofed account purporting to be one of the students at Plaintiff's school

d) Defendant's Answer to the Complaint containing assertions of the Fifth Amendment privilege

e) Defendant's response to Plaintiff's Requests for Production containing assertions of the Fifth Amendment privilege

f) Requests for Admission Served by Plaintiff to Defendant, Dated August 8, 2017, regarding Defendant impersonating third-parties when communicating with those who knew Plaintiff and that he created a fake Facebook profile in the name of someone in Plaintiff's social network

9

g)    Screenshots of spoofed emails from website "AddThis": from Plaintiff's classmate to Plaintiff containing forwarded email sent to Plaintiff's classmate (May 10, 2013) and identifying a representative of Plaintiff's university as the sender; sent to Plaintiff's mother and identifying a classmate of Plaintiff as the sender (May 11, 2013)

h)    Screenshots from a Facebook Profile attributed to someone in Plaintiff's social network including conversations from fake profiler and another person, undated

i)    Defendant's Answer in which Defendant effectively admits that those individuals did not provide consent to their impersonation

3)    Key evidence establishing element 2, for both theories A and B: Defendant intended to intimidate Plaintiff, humiliate her, and cause her harm:

a)    Testimony of Plaintiff, including descriptions of the numerous threats made by Defendant and his knowledge of her past trauma and particular areas of special emotional vulnerability

b)    Testimony of Defendant

c)    Recording of phone call between Plaintiff and Defendant taken on or about May 8, 2013, in which Defendant made various threats to Plaintiff

d)    Screenshots of text messages between Plaintiff and Defendant on or about May 8, 2013 in which in which Defendant taunts Plaintiff

e)

f)    Defendant's Answer to the Complaint containing assertions of the Fifth Amendment privilege

g)    Defendant's response to Plaintiff's Requests for Production containing assertions of the Fifth Amendment privilegeRequests for Admission Served by Plaintiff to Defendant, Dated August 8, 2017, regarding Defendant's intent related to his impersonation of Plaintiff and others

4)   Key evidence establishing element 3, for both theories A and B: Defendant's impersonations caused Plaintiff to fear her life and suffer severe emotional distress:

a)   Plaintiff will testify regarding her severe emotional distress. This testimony will likely include a description of the physical symptoms she suffered, including, but not limited to skin issues, eating, sleep problems, and uncontrollable bouts of crying. Additionally, she will likely testify as to the emotional toll Defendant's conduct took on her, such as, but not limited to feelings of shame, humiliation, and worthlessness. Further, her testimony will likely include an explanation of her doctor visits to assist with her trying to work through the many challenges Defendant's conduct presented

b)   Testimony of Plaintiff's mother, including that she witnessed Plaintiff's suffering and distress

c)   Testimony of Defendant

d)   Recording of phone call between Plaintiff and Defendant taken on or about May 8, 2013, in which Defendant made a number of threats to Plaintiff

e)   Screenshots of text messages between Plaintiff and Defendant on or about May 8, 2013 in which Defendant taunted Plaintiff in a number of ways

f)   Defendant's Answer to the Complaint containing assertions of the Fifth Amendment privilege

g)   Defendant's response to Plaintiff's Requests for Production containing assertions of the Fifth Amendment privilege

h)   Requests for Admission Served by Plaintiff to Defendant, Dated August 8, 2017, regarding Defendant's intent that his impersonation would cause Plaintiff to fear for her life and cause emotional distress

11

**Claim 3:  Key Evidence Supporting Plaintiff's Claim that Defendant**
**is Liable for the Tort of Intrusion**

1) Key evidence establishing element 1: that Defendant intruded into a private place and matter includes but is not limited to the following:

    a) Testimony of Plaintiff, including that she no longer felt safe in her home after Defendant published her contact information online and directly invited strangers to visit her address for sexual intercourse

    b) Testimony of Plaintiff's mother regarding communications she received by a person or persons she understood to be related to Plaintiff's school

    c) Testimony of Defendant

    d) Requests for Admission Served by Plaintiff to Defendant, Dated August 8, 2017 relating to Defendant's intrusion into Plaintiff's private place and materials

    e) Screenshots of spoofed emails from website "AddThis": from Plaintiff's classmate to Plaintiff containing forwarded email sent to Plaintiff's classmate (May 10, 2013) and identifying a representative of Plaintiff's university as the sender; sent to Plaintiff's mother and identifying a classmate of Plaintiff as the sender (May 11, 2013)

    f) Screenshot of nude images of Plaintiff posted from a Facebook Profile, undated

    g) Screenshots of a Facebook conversation between two individuals, undated

2) Key evidence establishing element 2: Defendant's intrusion was highly offensive to a reasonable person includes but is not limited to the following:

    a) Testimony of Plaintiff, including that Defendant published videos of her engaging in private sexual acts within the confines of her home to any person with access to the internet, as well as that Defendant published photographs and videos of her nude body that she had recorded in private

b) Testimony of Plaintiff's mother, including that she received a link the sexually explicit photographs and videos of Plaintiff only because Defendant had impersonated another person; if Defendant had sent her the links she would not have opened them

c) Testimony of Defendant

d) Requests for Admission Served by Plaintiff to Defendant, Dated August 8, 2017

e) Screenshots of spoofed emails from website "AddThis": from Plaintiff's classmate to Plaintiff containing forwarded email sent to Plaintiff's classmate (May 10, 2013) and identifying a representative of Plaintiff's university as the sender; sent to Plaintiff's mother and identifying a classmate of Plaintiff as the sender (May 11, 2013)

f) Screenshot of nude images of Plaintiff posted from a Facebook Profile

g) Screenshots of a Facebook conversation between two individuals, undated

h) Defendant's Answer to Plaintiff's First Amended Complaint in which Defendant effectively admits that those individuals did not provide consent to their impersonation, Dkt. No. 29

**Claim 4:  Key Evidence Supporting Plaintiff's Claim that Defendant Intentionally Inflicted Emotional Distress**

1) Key evidence establishing element 1: Defendant's conduct was outrageous includes but is not limited to the following:

a) Testimony of Plaintiff, including that she sent Defendant the sexually explicit photographs and videos because she was in a romantic relationship with him and trusted him and wanted to cultivate intimacy with him, that Defendant knew of Plaintiff's family history surrounding a member's suicide; that Defendant knew of this trauma for Plaintiff and

13

1  her family and intentionally sought to harm her further by exploiting this

2  vulnerability

3  b)  Testimony of Plaintiff's mother, including certain admissions of

4  Defendant

5  c)  Testimony of Defendant

6  d)  Recording of phone call between Plaintiff and Defendant taken on or

7  about May 8, 2013, in which Defendant made various threats to Plaintiff,

8  including that among other things, that Plaintiff would not be able to

9  graduate from school without killing herself "after what I do to you"

10 e)  Screenshots of text messages between Plaintiff and Defendant on or

11 about May 8, 2013, in which Defendant taunts Plaintiff with the fact that

12 he possesses the sexually explicit materials, implies that he will use the

13 pictures and videos to ruin her life, and even sends her one of the pictures

14 to strike fear in her with the fact that he was serious about his threats

15 f)  Requests for Admission Served by Plaintiff to Defendant, Dated August

16 8, 2017 regarding his conduct with respect to Plaintiff

17 g)  Excel Spreadsheet identifying websites containing images / videos of

18 Plaintiff, undated

19 h)  Word document containing a list of websites referring to Plaintiff,

20 undated

21 i)  Excel spreadsheet reflecting websites upon which Plaintiff's copyrighted

22 and other material appeared, undated

23 j)  Screenshots of a dating profile from the dating website "OKCupid"

24 containing images of Plaintiff

25 k)  Screenshots of text messages that Plaintiff received from various

26 individuals in connection with fake profiles created in her name:

27 "Andrew" (May 9, 2013); "Devon" (May 9, 2013); "Emmanuel" (May 9,

28 2013); "Harold" (May 9, 2013); "Jim" (May 9, 2013); "Nick" (May 9,

2013); "Moses" (May 9, 2013); "Patrick" (May 9, 2013); "Paul" (May 9 or 10, 2013); unknown person with phone number (818) 808… (May 9, 2013); unknown person with phone number (714) 872-1… (May 9, 2013); unknown person with phone number (857) 998-1… (May 9, 2013); unknown person with phone number (714) 273-8… (May 9, 2013); "Will" (May 9, 2013); "Victor" referring to the website: "xHamster" (May 10, 2013).

l)  Screenshots of spoofed emails from website "AddThis": from Plaintiff's classmate to Plaintiff containing forwarded email sent to Plaintiff's classmate (May 10, 2013) and identifying a representative of Plaintiff's university as the sender; sent to Plaintiff's mother and identifying a classmate of Plaintiff as the sender (May 11, 2013)

m)  Screenshot of nude images of Plaintiff posted from a  Facebook Profile attributed to someone in Plaintiff's social network (undated)

n)  Screenshots reflecting that nude images and videos of Plaintiff were published on various websites on the Internet:  "xHamster" (June 7, 2013); "xHamster" (June 9, 2013); Facebook Profile attributed to someone in Plaintiff's social network; screenshot of a Google Alert received by Plaintiff referring to "The Dirty," (June 7, 2013); screenshots from "The Dirty" (various days in June, 2013); screenshot from "MyEx" (June 29, 2013); screenshot from "Tumblr" (August 14, 2013); screenshot from "Motherless" (August 2, 2013); screenshot from "Adult Space" (July 15 and 16, 2013); screenshot from "You Got Posted" (June 25, 2013); screenshot from "HardSexTube" (May 14, 2013)

o)  Screenshot of search results of a Google web search for websites using Plaintiff's name and university as search terms dated June 10, 2013

///

///

2)   Key evidence establishing element 2: Defendant intended to cause Plaintiff severe emotional distress includes but is not limited to the following:

    a)   Testimony of Defendant

    b)   Testimony of Plaintiff, including that Defendant was aware of her family history as to trauma relating to a suicide and that he escalated his malicious conduct against Plaintiff

    c)   Testimony of Plaintiff's mother, including as to the emotional distress and trauma Plaintiff underwent over the course of Defendant' acts, that Defendant admitted to the acts and promised to stop, and that Defendant continued and escalated his malicious conduct after learning of the harm to Plaintiff

    d)   Recording of phone call between Plaintiff and Defendant taken on or about May 8, 2013, in which Defendant stated that among other things, various threats to Plaintiff including but not limited to that Plaintiff would not be able to graduate from school without killing herself "after what I do to you"

    e)   Screenshot of text messages between Plaintiff and Defendant on or about May 8, 2013, in which Defendant taunts Plaintiff with the fact that he possesses the sexually explicit materials, implies that he will use the pictures and videos to ruin her life, and even sends her one of the pictures to strike fear in her with the fact that he was serious about his threats

    f)   Requests for Admission Served by Plaintiff to Defendant, Dated August 8, 2017 regarding Defendant's intent to cause severe emotional distress

3)   Key evidence establishing element 3: Plaintiff suffered severe emotional includes but is not limited to the following:

    a)   Plaintiff will testify regarding her severe emotional distress.   This testimony will likely include a description of the physical symptoms she suffered, including, but not limited to skin issues, eating, sleep problems,

and uncontrollable bouts of crying.  Additionally, she will likely testify as to the emotional toll Defendant's conduct took on her, such as, but not limited to feelings of shame, humiliation, and worthlessness. Further, her testimony will likely include an explanation of her doctor visits to assist with her trying to work through the many challenges Defendant's conduct presented

b)   Testimony of Plaintiff's mother, including as to Plaintiff's resulting depression, emotional trauma, and the effects Defendant's conduct has had on Plaintiff

c)   Records of Plaintiff's doctor visits as a result of Defendant's conduct

4)   Key evidence establishing element 4: Plaintiff's severe emotional distress was actually and proximately caused by Defendant's conduct includes but is not limited to the following:

a)   Plaintiff will testify regarding her severe emotional distress.  This testimony will likely include a description of the physical symptoms she suffered, including, but not limited to skin issues, eating, sleep problems, and uncontrollable bouts of crying.  Additionally, she will likely testify as to the emotional toll Defendant's conduct took on her, such as, but not limited to feelings of shame, humiliation, and worthlessness. Further, her testimony will likely include an explanation of her doctor visits to assist with her trying to work through the many challenges Defendant's conduct presented

b)   Testimony of Plaintiff's mother, including as to Plaintiff's resulting depression, emotional trauma, and the effects Defendant's conduct has had on Plaintiff

c)   Recording of phone call between Plaintiff and Defendant taken on or about May 8, 2013

17

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

d)    Screenshot of text messages between Plaintiff and Defendant on or about May 8, 2013

e)    Requests for Admission Served by Plaintiff to Defendant, Dated August 8, 2017

f)    Excel Spreadsheet identifying websites containing images / videos of Plaintiff, undated

g)    Word document containing a list of websites referring to Plaintiff, undated

h)    Excel spreadsheet reflecting websites upon which Plaintiff's copyrighted and other material appeared, undated

i)    Screenshots of a dating profile from the dating website "OKCupid" containing images of Plaintiff

j)    Screenshot of text messages  that Plaintiff received from "Victor" referring to the website: "xHamster" on May 10, 2013

k)    Screenshots of spoofed emails from website "AddThis": from Plaintiff's classmate to Plaintiff containing forwarded email sent to Plaintiff's classmate (May 10, 2013) and identifying a representative of Plaintiff's university as the sender; sent to Plaintiff's mother and identifying a classmate of Plaintiff as the sender (May 11, 2013)

l)    Screenshot of nude images of Plaintiff posted from a  Facebook Profile

m)    Screenshot of a Google Alert received by Plaintiff referring to Plaintiff's name or images being used on the website: "The Dirty," dated June 7, 2013

n)    Screenshot of search results of a Google web search for websites using Plaintiff's name and university as search terms dated June 10, 2013

o)    Screenshots reflecting that nude images and videos of Plaintiff were published on various websites on the Internet:  "xHamster" (June 7, 2013); "xHamster" (June 9, 2013); Facebook Profile attributed to

18

someone in Plaintiff's social network; screenshot of a Google Alert received by Plaintiff referring to "The Dirty," (June 7, 2013); screenshots from "The Dirty" (various days in June, 2013); screenshot from "MyEx" (June 29, 2013); screenshot from "Tumblr" (August 14, 2013); screenshot from "Motherless" (August 2, 2013); screenshot from "Adult Space" (July 15 and 16, 2013); screenshot from "You Got Posted" (June 25, 2013); screenshot from "HardSexTube" (May 14, 2013)

**Claim 5:  Key Evidence that Defendant Is Liable for Negligence**

1)    Key evidence establishing element 1: Defendant owed a duty of care to Plaintiff includes but is not limited to the following:

   a)    Testimony of Plaintiff, including that she gave Defendant the photographs and videos when they were in a romantic relationship and as a means of maintaining intimacy despite the long-distance of the relationship, and that Defendant knew that the photographs and videos were privately for his sole use and viewing

   b)    Requests for Admission Served by Plaintiff to Defendant, Dated August 8, 2017 regarding Defendant's duty of care toward Plaintiff

2)    Key evidence establishing element 2: that Defendant breached the duties he owed to Plaintiff includes but is not limited to the following:

   a)    Testimony of Defendant

   b)    Testimony of Plaintiff, including that when she gave Defendant the photographs and videos, she reasonably expected, and he agreed, that he would keep them private, as well as that his conduct caused her great harm

   c)    Testimony of Plaintiff's mother

   d)    Recording of phone call between Plaintiff and Defendant taken on or about May 8, 2013

e)    Screenshot of text messages between Plaintiff and Defendant on or about May 8, 2013

f)    Requests for Admission Served by Plaintiff to Defendant, Dated August 8, 2017 regarding Defendant's breach of the duties he owed Plaintiff

3)    Key evidence establishing element 3: that Defendant's breaches actually and foreseeably caused Plaintiff to suffer loss or damage, including severe emotional distress, includes but is not limited to the following:

a)    Plaintiff will testify regarding her severe emotional distress. This testimony will likely include a description of the physical symptoms she suffered, including, but not limited to skin issues, eating, sleep problems, and uncontrollable bouts of crying. Additionally, she will likely testify as to the emotional toll Defendant's conduct took on her, such as, but not limited to feelings of shame, humiliation, and worthlessness. Further, her testimony will likely include an explanation of her doctor visits to assist with her trying to work through the many challenges Defendant's conduct presented

b)    Testimony of Plaintiff's mother including as to the emotional distress and trauma Plaintiff experienced over the course of Defendant' acts and as a result of Defendant's acts

c)    Recording of phone call between Plaintiff and Defendant taken on or about May 8, 2013

d)    Screenshot of text messages between Plaintiff and Defendant on or about May 8, 2013

e)    Requests for Admission Served by Plaintiff to Defendant, Dated August 8, 2017 regarding Defendant's breach of duty causing Plaintiff harm

f)    Excel Spreadsheet identifying websites containing images / videos of Plaintiff, undated

20

g) Word document containing a list of websites referring to Plaintiff, undated

h) Excel spreadsheet reflecting websites upon which Plaintiff's copyrighted and other material appeared, undated

i) Screenshots of a dating profile from the dating website "OKCupid" containing images of Plaintiff

j) Screenshots of text messages that Plaintiff received from various individuals in connection with fake profiles created in her name: "Devon" (May 9, 2013); "Emmanuel" (May 9, 2013); "Harold" (May 9, 2013); "Jim" (May 9, 2013); "Nick" (May 9, 2013); "Moses" (May 9, 2013); "Patrick" (May 9, 2013); "Paul" (May 9 or 10, 2013); unknown person with phone number (818) 808… (May 9, 2013); unknown person with phone number (714) 872-1… (May 9, 2013); unknown person with phone number (857) 998-1… (May 9, 2013); unknown person with phone number (714) 273-8… (May 9, 2013); "Will" (May 9, 2013); "Victor" referring to the website: "xHamster" (May 10, 2013)

k) Screenshots of spoofed emails from website "AddThis": from Plaintiff's classmate to Plaintiff containing forwarded email sent to Plaintiff's classmate (May 10, 2013) and identifying a representative of Plaintiff's university as the sender; sent to Plaintiff's mother and identifying a classmate of Plaintiff as the sender (May 11, 2013)

l) Screenshots reflecting that Plaintiff's copyrighted photographs were published on various websites on the Internet: "xHamster" (June 7, 2013); "xHamster" (June 9, 2013); Facebook Profile attributed to someone in Plaintiff's social network; screenshot of a Google Alert received by Plaintiff referring to "The Dirty," (June 7, 2013); screenshots from "The Dirty" (various days in June, 2013); screenshot from "MyEx" (June 29, 2013); screenshot from "Tumblr" (August 14, 2013);

21

screenshot from "Motherless" (August 2, 2013); screenshot from "Adult Space" (July 15 and 16, 2013); screenshot from "You Got Posted" (June 25, 2013); screenshot from "HardSexTube" (May 14, 2013)

m)   Screenshot of nude images of Plaintiff posted from a Facebook Profile

4)   Key evidence establishing element 4: that Plaintiff suffered loss or damage, including severe emotional distress, includes but is not limited to the following:

a)   Plaintiff will testify regarding her severe emotional distress.  This testimony will likely include a description of the physical symptoms she suffered, including, but not limited to skin issues, eating, sleep problems, and uncontrollable bouts of crying.  Additionally, she will likely testify as to the emotional toll Defendant's conduct took on her, such as, but not limited to feelings of shame, humiliation, and worthlessness. Further, her testimony will likely include an explanation of her doctor visits to assist with her trying to work through the many challenges Defendant's conduct presented.

b)   Testimony of Plaintiff's mother including as to Plaintiff's resulting depression, emotional trauma, and the effects Defendant's conduct has had on Plaintiff

**Claim 6:  Key Evidence that Defendant Negligently Caused Severe Emotional Distress**

*See* footnote 1 and Claim 5, above.

**Claim 7:  Key Evidence that Defendant Committed Stalking Under Cal. Civ. Code § 1708.7**

1)   Key evidence establishing element 1: Defendant intended his conduct to harass Plaintiff includes but is not limited to the following:

a)   Testimony of Plaintiff, including that Defendant promised to harass her and make her want to commit suicide

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

b)   Testimony of Plaintiff's mother, including that Defendant was made aware of the harm to Plaintiff resulting from his conduct and that he continued with the conduct and even escalated the maliciousness of the conduct after learning of the harm occurring to Plaintiff

c)   Recording of phone call between Plaintiff and Defendant taken on or about May 8, 2013, which includes among other things statements of Defendant's intent to harass Plaintiff

d)   Screenshot of text messages between Plaintiff and Defendant on or about May 8, 2013

e)   Requests for Admission Served by Plaintiff to Defendant, Dated August 8, 2017 regarding Defendant's intent to cause Plaintiff harm, fear for her life, and severe emotional distress

f)   Excel Spreadsheet identifying websites containing images / videos of Plaintiff, undated

g)   Word document containing a list of websites referring to Plaintiff, undated

h)   Excel spreadsheet reflecting websites upon which Plaintiff's copyrighted and other material appeared, undated

i)   Screenshots of a dating profile from the dating website "OKCupid" containing images of Plaintiff

j)   Screenshots of text messages that Plaintiff received from various individuals in connection with fake profiles created in her name: "Andrew" (May 9, 2013); "Devon" (May 9, 2013); "Emmanuel" (May 9, 2013); "Harold" (May 9, 2013); "Jim" (May 9, 2013); "Nick" (May 9, 2013); "Moses" (May 9, 2013); "Patrick" (May 9, 2013); "Paul" (May 9 or 10, 2013); unknown person with phone number (818) 808… (May 9, 2013); unknown person with phone number (714) 872-1… (May 9, 2013); unknown person with phone number (857) 998-1… (May 9,

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

2013); unknown person with phone number (714) 273-8… (May 9, 2013); "Will" (May 9, 2013); "Victor" referring to the website: "xHamster" (May 10, 2013)

k)  Screenshots of spoofed emails from website "AddThis": from Plaintiff's classmate to Plaintiff containing forwarded email sent to Plaintiff's classmate (May 10, 2013) and identifying a representative of Plaintiff's university as the sender; sent to Plaintiff's mother and identifying a classmate of Plaintiff as the sender (May 11, 2013)

l)  Screenshots reflecting that Plaintiff's copyrighted photographs were published on various websites on the Internet:  "xHamster" (June 7, 2013); "xHamster" (June 9, 2013); Facebook Profile attributed to someone in Plaintiff's social network; screenshot of a Google Alert received by Plaintiff referring to "The Dirty," (June 7, 2013); screenshots from "The Dirty" (various days in June, 2013); screenshot from "MyEx" (June 29, 2013); screenshot from "Tumblr" (August 14, 2013); screenshot from "Motherless" (August 2, 2013); screenshot from "Adult Space" (July 15 and 16, 2013); screenshot from "You Got Posted" (June 25, 2013); screenshot from "HardSexTube" (May 14, 2013)

m)  Screenshot of nude images of Plaintiff posted from a Facebook Profile, undated

2)  Key evidence establishing element 2: that the conduct caused Plaintiff to suffer emotional distress and fear for her safety includes but is not limited to:

a)  Plaintiff will testify regarding her severe emotional distress.  This testimony will likely include a description of the physical symptoms she suffered, including, but not limited to skin issues, eating, sleep problems, and uncontrollable bouts of crying.  Additionally, she will likely testify as to the emotional toll Defendant's conduct took on her, such as, but not limited to feelings of shame, humiliation, and worthlessness. Further, her

testimony will likely include an explanation of her doctor visits to assist with her trying to work through the many challenges Defendant's conduct presented

b)   Testimony of Plaintiff's mother including that Defendant was made aware of the harm to Plaintiff resulting from his conduct and that he continued with the conduct and even escalated the maliciousness of the conduct after learning of the harm occurring to Plaintiff

c)   Recording of phone call between Plaintiff and Defendant taken on or about May 8, 2013

d)   Screenshot of text messages between Plaintiff and Defendant on or about May 8, 2013

e)   Requests for Admission Served by Plaintiff to Defendant, Dated August 8, 2017 regarding Defendant's conduct causing Plaintiff to suffer emotional distress

f)   Excel Spreadsheet identifying websites containing images / videos of Plaintiff, undated

g)   Word document containing a list of websites referring to Plaintiff, undated

h)   Excel spreadsheet reflecting websites upon which Plaintiff's copyrighted and other material appeared, undated

3)   Key evidence establishing element 3: Defendant made credible threats to harm Plaintiff and endanger her safety includes but is not limited to the following:

a)   Testimony of Plaintiff, including that Defendant reminded Plaintiff of his possession of the sexually explicit material as part of his promise and threat to ruin her life, as well as that Defendant knew that Plaintiff was aware of his greater than average computer skills and that she took his threats credibly

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

b)      Testimony of Plaintiff's mother including that Defendant admitted to the acts and promised to stop, and that Defendant continued and escalated his malicious conduct after learning of the harm to Plaintiff

c)      Recording of phone call between Plaintiff and Defendant taken on or about May 8, 2013, in which Defendant stated various threats including among other things, that Plaintiff would not be able to graduate from school without killing herself "after what I do to you"

d)      Screenshot of text messages between Plaintiff and Defendant on or about May 8, 2013 in which Defendant taunted Plaintiff in various ways

e)      Requests for Admission Served by Plaintiff to Defendant, Dated August 8, 2017 regarding Defendant's threats to Plaintiff

f)      Excel Spreadsheet identifying websites containing images / videos of Plaintiff, undated

g)      Word document containing a list of websites referring to Plaintiff, undated

h)      Screenshots of a dating profile from the dating website "OKCupid" containing images of Plaintiff

i)      Screenshots of text messages that Plaintiff received from various individuals in connection with fake profiles created in her name: "Andrew" (May 9, 2013); "Devon" (May 9, 2013); "Emmanuel" (May 9, 2013); "Harold" (May 9, 2013); "Jim" (May 9, 2013); "Nick" (May 9, 2013); "Moses" (May 9, 2013); "Patrick" (May 9, 2013); "Paul" (May 9 or 10, 2013); unknown person with phone number (818) 808… (May 9, 2013); unknown person with phone number (714) 872-1… (May 9, 2013); unknown person with phone number (857) 998-1… (May 9, 2013); unknown person with phone number (714) 273-8… (May 9, 2013); "Will" (May 9, 2013); "Victor" referring to the website: "xHamster" (May 10, 2013)

26

4)   Key evidence establishing element 4: Defendant continued his conduct after being asked to cease and abate includes but is not limited to the following:

a)   Testimony of Plaintiff, including that Defendant's conduct escalated in maliciousness and creativity after Plaintiff was granted a restraining order against him and he was served with notice of the restraining order

b)   Testimony of Plaintiff's mother, including that she begged Defendant to cease and abate his conduct in the early days of his malicious campaign, and even though he promised he would stop his conduct, he immediately continued uploading the photographs and videos of Plaintiff, as well as impersonating others to more widely distribute the materials in his prolonged pattern of terrorizing Plaintiff

c)   Requests for Admission Served by Plaintiff to Defendant, Dated August 8, 2017 regarding Defendant's continued conduct after being asked to stop

d)   Form DV-109 Notice of Court Hearing dated May 13, 2013 which grants Temporary Restraining Order and proof of service thereof dated May 13, 2013

e)   Form DV-130 Restraining Order After Hearing (Order of Protection) Dated June 3, 2013 and proof of service thereof

**(d)**   ***Summary of Affirmative Defenses Defendant has Pleaded***

In his Answer to Plaintiff's First Amended Complaint, Defendant asserts the following affirmative defenses[4]:

**First Affirmative Defense:** Waiver, Estoppel, Acquiescence, License

**Second Affirmative Defense:** Statute of Limitations and Laches.

**Third Affirmative Defense:** Acts/Omissions of Others.

**Fourth Affirmative Defense:** No Injury.

---

[4] As stated above, Plaintiff filed a motion to strike Defendant's answer and for the Court to enter default based on Plaintiff's failure to participate in this litigation.

27

1    **Fifth Affirmative Defense:** Offset.

2    **Sixth Affirmative Defense:** Speculative Damages.

3    **Seventh Affirmative Defense:** Assumption of the Risk.

4    **Eighth Affirmative Defense:** Contributory Negligence.

5    **Ninth Affirmative Defense:** Fair Use.

6    *(e)    Elements of Affirmative Defenses Defendant has Pleaded[5]*

7    <u>**First Affirmative Defense: Elements required to establish waiver,**</u>

8    <u>**estoppel, acquiescence, and license**</u>

9    Defendant has not articulated the basis for any of these theories, so Plaintiff is

10   unaware how Defendant intended to rely upon them.

11   <u>**Second Affirmative Defense: Elements Required to Establish Statute**</u>

12   <u>**of Limitations and Laches**</u>

13   1)   Plaintiff's claim was not filed within the time set by law; or

14   2)   Under the doctrine of laches, that Plaintiff caused an unreasonable delay in

15       bringing that action and Defendant has been prejudiced as a result of the delay.

16       CACI 454; Cal. Civ. Code § 3527; *see also*, Cal. Civ. Proc. Code § 312.

17   <u>**Third Affirmative Defense: Elements Required to Establish that The**</u>

18   <u>**Acts/Omissions of Others Were the Cause of Plaintiff's Harm**</u>

19   1)   That one or more nonparty tortfeasors were negligent or at fault; and

20   2)   That the negligence or fault of the one or more nonparty tortfeasors was a

21       substantial factor in causing Plaintiff's harm.[6]

22   ///

23   ///

24   _____

25   [5] Because Defendant failed to appear and respond to discovery, Plaintiff does not
     know how Defendant intended to argue the applicability of the affirmative defenses
26   asserted when Defendant was represented by counsel.   For that reason, Plaintiff
     simply supplies the Court with blackletter law regarding these defenses but reserves
27   her rights to argue that Defendant has no right to assert any of them or to revise and or
     add to her position as necessary.
28   [6] If the negligence or fault of a nonparty tortfeasor was a substantial factor in causing
     Plaintiff's harm, the jury must decide how much responsibility each has by assigning
     percentages or responsibility to each person.

## Fourth Affirmative Defense: Elements Required to Prove Plaintiff Suffered No Injury

Defendant has not articulated the basis for this theory, so Plaintiff is unaware how Defendant intended to rely upon it.

## Fifth Affirmative Defense: Elements Required to Prove Offset

Defendant has not articulated how this defense might apply, but there is a California code of Civil Procedure section that provides as follows:

1) Plaintiff owes Defendant money or the performance of some duty; or

2) Plaintiff failed to credit Defendant for money already paid or some duty already performed.

Cal. C.C.P. § 431.70; *see also Harrison v. Adams*, 20 Cal.2d 646, 648 (1942)

## Sixth Affirmative Defense: Elements Required to Prove Speculative Damages

1) No basis for a reasonable person to estimate the amount of loss suffered by Plaintiff's exists; and

2) Damages can *solely* be determined by speculation or guess

CACI 3900 and 3905A

## Seventh Affirmative Defense: Elements Required to Prove Assumption of the Risk

1) Plaintiff participated in an activity that is inherently dangerous;

2) Plaintiff had actual knowledge of the risk involved in the activity;

3) Plaintiff voluntarily accepted the risk, either expressly by agreement or implied by her words or conduct; and

4) Defendant did not intentionally injure Plaintiff or engage in conduct so reckless as to be totally outside the range of ordinary activity involved in the activity.

5) CACI 408; *Knight v. Jewett* (1992) 3 Cal.App.4th 296

**Eighth Affirmative Defense: Elements Required to Prove Contributory Negligence**

1) That Plaintiff was negligent; and

2) That Plaintiff's negligence was a substantial factor in causing her harm.[7]

CACI 405; *Drust v. Drust*, 113 Cal.App.3d 1, 6 (1980) (noting that this instruction should not be given absent substantial evidence that plaintiff was negligent)

**Ninth Affirmative Defense: Elements Required to Prove Fair Use**

1) Defendant used the copyrighted material in a reasonable way under the circumstances without the consent of Plaintiff; and

2) Defendant's use of the copyrighted material advanced the public interest.[8]

Ninth Circuit Manual of Model Civil Jury Instructions §17.22; 17 U.S.C. § 107

(f)   ***Key Evidence Relied on in Opposition to Each Affirmative Defense***

**First Affirmative Defense (Waiver, Estoppel, Acquiescence, License): Key Evidence in Opposition**

<u>Waiver</u>

Plaintiff voluntarily relinquished her rights;

  a)   Plaintiff's testimony, including that she never made any communication to Defendant that suggested she voluntarily relinquished any rights

  b)   Plaintiff's mother's testimony, including that Plaintiff objected to Defendant's conduct

  c)   Copyright registration documents for registration number: VAu 1-146-596, Dated June 11, 2013

  d)   Copyright registration documents for registration number: VAu 1-138-755, Date June 30, 2013

---

[7] If Defendant proves both elements, Plaintiff's damages are reduced by the jury's determination of the percentage of Plaintiff's responsibility.

[8] Defendant has the burden of proving this defense by a preponderance of the evidence.

1    Plaintiff's relinquishment of her rights was made with actual knowledge and
2    sufficient awareness of the relevant circumstances and likely consequences.

3          e)    Plaintiff's testimony, including that she never made any communication
4                to Defendant that suggested she voluntarily relinquished any rights, let
5                alone knew the circumstances of relinquishing those rights

6          f)    Plaintiff's mother's testimony, including that Plaintiff objected to
7                Defendant's conduct

8          g)    Copyright registration documents for registration number: VAu 1-146-
9                596, Dated June 11, 2013

10         h)    Copyright registration documents for registration number: VAu 1-138-
11               755, Date June 30, 2013

12   <u>Estoppel, Acquiescence, License</u>

13         Defendant has never articulated how he intends to argue these defenses and
14   failed to respond to Plaintiff's discovery, so Plaintiff has not had an opportunity to
15   discover any facts that he contends support the defense.  Key evidence that further
16   demonstrate that the defense does not apply include the following:

17   2)    Plaintiff's testimony, including that she never made any communication to
18         Defendant that suggested she voluntarily relinquished her rights, let alone knew
19         that she was relinquishing her rights, or acquiesced to any of Defendant's
20         conduct or would not pursue claims based on Defendant's conduct; also that she
21         objected to Defendant's conduct.

22   3)    Plaintiff's mother's testimony, including that Plaintiff objected to Defendant's
23         conduct.

24         **Second Affirmative Defense (Statue of Limitations/Laches): Key**
25         **Evidence in Opposition**

26         Defendant has never articulated how he intends to argue this defense and failed
27   to respond to Plaintiff's discovery, so Plaintiff has not had an opportunity to discover

28

---

31

any facts that he contends support the defense.  Key evidence that further demonstrate that the defense does not apply include the following:

1)   The fact that the claims in the action were asserted within the applicable limitations period and were asserted within a reasonable time.

2)   Plaintiff's testimony, including that she acted reasonably in asserting her claims.

3)   Plaintiff's mother's testimony, including that Plaintiff acted reasonably in asserting her claims.

### Third Affirmative Defense (Acts/Omissions of Others): Key Evidence in Opposition

Defendant has never articulated how he intends to argue this defense and failed to respond to Plaintiff's discovery, so Plaintiff has not had an opportunity to discover any facts that he contends support the defense.  Key evidence that further demonstrate that the defense does not apply include the following:

1)   Plaintiff's testimony, including that she is unaware of any others who are responsible for Defendant's acts and for the damages she suffered.

2)   Plaintiff's mother's testimony, including that she is unaware of any others who are responsible for Defendant's acts and for the damages Plaintiff suffered.

### Fourth Affirmative Defense (No Injury): Key Evidence in Opposition

Defendant has never articulated how he intends to argue this defense and failed to respond to Plaintiff's discovery, so Plaintiff has not had an opportunity to discover any facts that he contends support the defense.  Key evidence that further demonstrate that the defense does not apply includes the following:

1)   Plaintiff's testimony, including that she suffered severe emotional distress and other damages as set forth in each of Plaintiff's claims.

2)   Plaintiff's mother's testimony, including that Plaintiff suffered severe emotional distress and other damages as set forth in each of Plaintiff's claims.

**Fifth Affirmative Defense (Offset): Key Evidence in Opposition**

Defendant has never articulated how he intends to argue this defense and failed to respond to Plaintiff's discovery, so Plaintiff has not had an opportunity to discover any facts that he contends support the defense.  Key evidence that further demonstrate that the defense does not apply include the following:

1)   Plaintiff's testimony, including that she is unaware of any others who are responsible for Defendant's acts and for the damages she suffered.

2)   Plaintiff's mother's testimony, including that she is unaware of any others who are responsible for Defendant's acts and for the damages Plaintiff suffered.

**Sixth Affirmative Defense (Speculative Damages): Key Evidence in Opposition**

Defendant has never articulated how he intends to argue this defense and failed to respond to Plaintiff's discovery, so Plaintiff has not had an opportunity to discover any facts that he contends support the defense.  Key evidence that further demonstrate that the defense does not apply include the following:

1)   Plaintiff's testimony, including that the specific harm she suffered as a result of Defendant's conduct.

2)   Plaintiff's mother's testimony, including that she witnessed the specific harm Plaintiff suffered.

3)   All of the factual bases for Plaintiff's claims.

**Seventh Affirmative Defense (Assumption of the Risk): Key Evidence in Opposition**

Defendant has never articulated how he intends to argue this defense and failed to respond to Plaintiff's discovery, so Plaintiff has not had an opportunity to discover any facts that he contends support the defense.  Key evidence that further demonstrate that the defense does not apply include the following:

1)   Plaintiff's testimony, including that she did not assume any risks in connection with the manner in which she related to Defendant.

33

2)   Plaintiff's mother's testimony, including that she is unaware of Plaintiff any risks in connection with the manner in which Plaintiff related to Defendant.

### Eighth Affirmative Defense (Contributory Negligence): Key Evidence in Opposition

Defendant has never articulated how he intends to argue this defense and failed to respond to Plaintiff's discovery, so Plaintiff has not had an opportunity to discover any facts that he contends support the defense.  Key evidence that further demonstrate that the defense does not apply include the following:

1)   Plaintiff's testimony, including that she is unaware of any others (including Plaintiff) who contributed to Defendant's negligence (if his actions are considered negligent and not intentional).

2)   Plaintiff's mother's testimony, including that she is unaware of any others (including Plaintiff and herself) who contributed to Defendant's negligence (if his actions are considered negligent and not intentional).

### Ninth Affirmative Defense (Fair Use): Key Evidence in Opposition

Defendant has never articulated how he intends to argue this defense and failed to respond to Plaintiff's discovery, so Plaintiff has not had an opportunity to discover any facts that he contends support the defense.  Key evidence that further demonstrate that the defense does not apply include the following:

1)   Plaintiff's testimony, including that she never agreed to any use of any of her photographs in any manner that Defendant used them.

2)   Plaintiff's mother's testimony, including that she is unaware of Plaintiff ever agreeing to any use of any of her photographs in any manner that Defendant used them.

3)   The fact that the purpose of Defendant's use of Plaintiff's copyrighted material was to intentionally harm Plaintiff

4)   The fact that Plaintiff's copyrighted material is artistic

5)   The fact that Defendant took the entirety of certain of Plaintiff's works

1    6)    The fact that Defendant destroyed Plaintiff's right to use her photographs in the

2          manner she desired to use them.

3    *(h)    Anticipated Evidentiary Issues*

4          Plaintiff does not anticipate any evidentiary issues. Defendant has consistently

5    refused to participate in this litigation, including failing to comply with a Court order

6    requiring Defendant to explain his failure to participate in the case and to notify the

7    Court of any change in his contact information, and to raise any arguments regarding

8    service of Plaintiff's notice of deposition or of Plaintiff's discovery motion regarding

9    Defendant's failure to appear for deposition.  (ECF No. 114).  Plaintiff has filed a

10   motion to strike Defendant's answer and for entry of default based on his failure to

11   participate in the litigation. (ECF No. 123.)  Such motion is set for hearing on January

12   8, 2018 and Plaintiff does not anticipate that Defendant will change his pattern of

13   failing to comply with applicable rules and failing to participate in this litigation.

14   Accordingly, Plaintiff expects that default will be entered against Defendant and

15   Plaintiff will then seek entry of default judgment.  In connection with that request,

16   "the factual allegations of the complaint, except those relating to the amount of

17   damages, will be taken as true." *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915,

18   917-18 (9th Cir. 1987).  Plaintiff also served requests for admission on Defendant

19   targeting virtually all of the elements on liability for each of the claims, and Defendant

20   failed to respond to those requests.  As such, the requests are deemed admitted.

21         Assuming Plaintiff obtains a default judgment, then Plaintiff intends to request

22   damages.  In Plaintiff's request for damages, the court may rely on declarations

23   submitted by the parties pursuant to Local Rule 55-2 or conduct a full evidentiary

24   hearing. Fed. R. Civ. 55(b)(2). A hearing on damages is not required as long as the

25   plaintiff provides an evidentiary basis for her asserted damages. *Philip Morris USA,*

26   *Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003).

27         In the unlikely event that Defendant appears in this litigation, Plaintiff will

28   request the opportunity to take discovery, because Defendant has failed to comply

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

with several discovery orders and failed to appear for deposition, for which he has been sanctioned.  As it stands, however, pursuant to the unanswered requests for admission served on Defendant, he has already admitted the key facts against him in this case.

### (i)   Anticipated Issues of Law

Plaintiff has alleged and Defendant has effectively admitted the elements necessitated by each claim. It is clear, based on direct evidence Plaintiff possesses, that Defendant acted with malice.  Accordingly, Plaintiff is entitled to damages, including punitive damages, for the injuries alleged in each of her claims and therefore anticipates that the Court will request an appropriate means of determining such damages. In anticipation of the Court inquiring of this issue, Plaintiff presents to the Court the law on the issue of damages that Plaintiff contends apply, and which provides the Court guidance with respect to awarding Plaintiff a reasonable recovery as well as an award of punitive damages.  Plaintiff also includes a section on sanctions if Defendant does choose to appear and is not defaulted in this action.   Plaintiff anticipates submitting further briefing on these issues as they arise.

### 1.   **Damages**

### **Determining Compensatory Damages for Emotional Distress**

A district court has "wide latitude" and discretion in determining the amount of damages to award upon default judgment. *James v. Frame*, 6 F.3d 307, 310 (9th Cir. 1993). In cases of "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering," compensatory and punitive damages admittedly are "not easily quantifiable, and the amount of damages must necessarily be left to the sound discretion of the [trier of fact]." *Diaz v. Oakland Tribune*, 139 Cal.App.3d 118, 137 (1983).

In computing emotional distress and punitive damages at default judgment, district courts have commonly "surveyed other cases with similar facts to arrive at an appropriate sum." *Powell v. Blackrock Asset Mgmt., LLC*, No. SACV 11-0517-JST,

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

2011 WL 4551450, at *4 (C.D. Cal. Sept. 30, 2011) (citing and following damages award from a Maryland district court case). This includes damages awarded by jury verdicts. *Brantley v. Boyd*, No. C 07–6139 MMC, 2013 WL 3766911, at *8 (N.D. Cal. 2013) (stating that Ninth Circuit district courts have made it a practice to "compare the damages sought in default judgment to jury awards in similar cases.") (citing, e.g., *Hernandez v. Madrigal*, Case No. 09–cv–0413 MCE (GGH), 2011 WL 6936364 (E.D. Cal. Dec. 30, 2011); *Esco Marine Inc. v. SS PACIFIC STAR*, Case No. 11–cv–1353 KJM (GGH), 2011 WL 4852272 (E.D. Cal. Oct. 11, 2011); *F.T.C. v. Hope for Car Owners*, Case No. 12–cv–0778 GEB (EFB), 2013 WL 322895 (E.D. Cal. Jan. 24, 2013)).

Empirically, courts have awarded a wide array of damages in tort cases including cases that present a much less compelling factual scenario than presented here. In *Taylor v. Frank,* No. CIV. 09-00002 JMS, 2011 WL 2118270, at *1 (D. Haw. May 2, 2011), the Court awarded $425,000 in damages where a defendant published nude photos and videos of plaintiff, as well as her contact information, on eleven different websites. In addition, defendant frequently included posts with the photographs and videos such as "[m]arried woman looking for discreet men for kinky fun this weekend" and "no strings attached relationship for sex," which led to multiple calls to plaintiff's personal phone and work phone. In *Diaz v. Oakland Tribune,* 139 Cal.App.3d 118, 137 (1983), the Court awarded $775,000 in general and punitive damages where a student newspaper published an article about a student who had a gender change operation that ridiculed the student and caused the student to suffer insomnia, nightmares, and memory lapses, and that she delayed her planned enrollment in a nearby college. In *Rode v. Credio,* No. CV-14-02354-PHX-SRB, 2016 WL 5339682, at *7 (D. Ariz. Aug. 3, 2016), report and recommendation adopted, No. CV-14-02354-PHX-SRB, 2016 WL 5109866 (D. Ariz. Sept. 20, 2016), a plaintiff was awarded $10M in general and punitive damages where she was assaulted by defendant inmate based on the fact that she suffered from "severe emotional

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

distress, anxiety, depression, psychological trauma which produces flashbacks, night terrors, intense fear, helplessness, social impairment, severe insomnia, and a lack of self-esteem" as a result of defendant's actions. The court held that the harm to plaintiff and the egregiousness of defendant's conduct entitled plaintiff to $5,000,000 in general and $5,000,000 in punitive damages.

### Determining Punitive Damages

Punitive damages are available under California law for online impersonation with intent to cause harm, intentional infliction of emotional distress, negligent infliction of emotional distress, and stalking. *See* Cal. Civ. Code § 3294. Where punitive damages are recoverable as a matter of law, they can be awarded once properly established at the evidentiary hearing. *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 509 (2nd Cir. 1991).

Punitive damages are appropriate where the defendant's conduct is oppressive, fraudulent, or malicious. Cal. Civ. Code § 3294.  Malice means that Defendant acted with a willful and conscious disregard for the rights or safety of Plaintiff. Cal. Civ. Code § 3294(c)(1); *Neal v. Farmer's Ins. Exchange*, 21 Cal.3d 910, 925(1978) (stating a defendant's knowledge of the extent and severity of plaintiff's foreseeable injuries is significantly relevant to a finding of malice).  "Conscious disregard" means that Defendant was "aware of the probable dangerous consequences of [his] conduct, and that [he] willfully and deliberately failed to avoid those consequences." *Taylor v. Superior Court*, 24 Cal. 3d 890, 901 (1979).  Oppression means that Defendant's conduct was "despicable" and subjected Plaintiff to cruel and unjust hardship in knowing disregard of her rights. Cal. Civ. Code § 3294(c)(2).  "Despicable conduct" is conduct that is so mean, vile, base, or contemptible that it would be looked down on and despised by reasonable people. *Mock v. Mich. Millers Mut. Ins. Co.*, 4 Cal.App.4th 306, 331 (1992).

Punitive damages are undoubtedly appropriate in this case. Among other things, Plaintiff possesses evidence of Defendant stating that he intended his conduct to cause

Plaintiff to want to kill herself.   The deemed admissions of Defendant also independently satisfy the criteria for a punitive damages award.  Defendant's actions were fueled by a desire to willfully harm the rights, reputation, and safety of Plaintiff. Defendant's conduct also was rooted in fraud: impersonating not only Plaintiff but her classmates and school officials in order to maximize the harm to Plaintiff. Defendant was not only aware of the danger he put Plaintiff in by inviting strangers to her home with the expectation of sexual intercourse, but actively and deliberately did so with the intent to endanger and terrify Plaintiff. Defendant was acutely aware of the probable consequences to Plaintiff's reputation, social relationships, and future career by sharing the photographs and videos of her to broad audiences online as well as directly with her closest social network, school administrators, and classmates.   Indeed, he actively and deliberately sought those consequences, as evidenced by his promise that he would destroy Plaintiff's life to an extent that would cause her to want to commit suicide.

The determination of the amount of a punitive damages award is "of necessity within the discretion of the trier of fact" based upon evaluation of, among other things, the "nature of the conduct" and "wisdom" of exacting pecuniary punishment. *Winterrowd v. David Freedman and Co., Inc*., 724 F.2d 823, 826 (9th Cir. 1984) (quoting *Fisher v. Volz*, 496 F.2d 333, 347 (3d Cir. 1974)). "There is no particular sum which represents the only correct amount for punitive damages in any given case; instead, there is a range of reasonableness for punitive damages reflective of fact finder's human response to the evidence presented." *Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc*., 155 Cal.App.3d 381, 391 (Ct. App. 1984). The reprehensibility of the acts of the defendant substantially drives the acceptable range in any given case and is "[p]erhaps the most important indicium of the reasonableness of a punitive damages award." *BMW of N. AM., Inc. v. Gore*, 517 U.S. 559, 575 (1996).

1    Plaintiff intends to submit further briefing on the issue of punitive damages to

2    discuss the tension between the general rule that a defendant's financial status is a key

3    factor in determining punitive damages, *Downey Savings & Loan Assn. v. Ohio*

4    *Casualty Ins. Co.*, 189 Cal.App.3d 1072, 1099-1100 (2d Dist. Cal. 1987), on the one

5    hand, and the general principal that a defaulting Defendant who intentionally avoids

6    litigation should not be able to take advantage of his mockery of the judicial process.

7    Indeed, courts have held that such conduct is sanctionable. *See Fair Hous. of Marin v.*

8    *Combs*, 285 F.3d 899, 905 (9th Cir. 2002) ("Disobedient conduct not shown to be

9    outside the litigant's control" merits sanctions.).   Plaintiff's position is that she is

10   entitled to punitive damages based on Defendant's conduct even if she cannot put into

11   evidence Defendant's financial status, because then Defendant (and other defendants

12   who act with malice and intend to hurt others) are incentivized to avoid litigation

13   rather than face a large judgment after trial.

14    Plaintiff also intends to submit by declaration evidence justifying an amount of

15   damages sought, including punitive damages, based in part at least on Plaintiff's

16   estimation of Defendant's net worth. If Defendant does not provide opposition to the

17   declaration, the court may accept Plaintiff's estimation as reasonable. *See* Condon v.

18   Condon, No. CV 07-4985-JFW (SSX), 2008 WL 11338437, at *6 (C.D. Cal. June 6,

19   2008)("Defendants have not submitted any declarations in opposition to Plaintiffs'

20   Application as they are permitted to do under Local Rule 55-2. Accordingly, the Court

21   accepts Plaintiffs' declarations estimating Defendants' net worth.").

22       **2.   Legal Procedure & Sanctions if Defendant Re-appears**

23       **Admissibility of Requests for Admission**

24    Even if Defendant re-appears in the litigation, the "deemed admitted" responses

25   to Plaintiff's requests for admission will remain as effectual legal admissions.  Fed. R.

26   Civ. Proc. 36(a). *Federal Trade Comm'n v. Medicor*, LLC, 217 F.Supp.2d 1048, 1053

27   (C.D. Cal. 2002).  This rule is self-executing and takes effect automatically. *Smith v.*

28   *Pacific Bell Tel. Co., Inc.*, 662 F.Supp.2d 1199, 1229 (C.D. Cal. 2009).  Accordingly,

the matters admitted are conclusively established without further proof or motion practice. *Tillamook County Smoker, Inc. v. Tillamook County Creamery Ass'n*, 465 F.3d 1102, 1112 (9th Cir. 2006).

### Excusable Neglect

Defendant will be required to make a showing that his non-response and non-compliance to Plaintiff's counsel and the Court itself derived from neglect rather than intention, and that that neglect is legally excusable. Defendant will be able to do neither.

Excusable neglect is an equitable concept and "takes account of factors such as prejudice, the length of the delay and impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the [defendant], and whether the [defendant] acted in good faith." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001); *JBR, Inc. v. Cafe Don Paco, Inc.*, No. 12-CV-02377 NC, 2014 WL 5034640, at *13 (N.D. Cal. Aug. 25, 2014), report and recommendation adopted as modified sub nom. *JBR, Inc v. Cafe Don Paco, Inc*, No. 12-CV-02377-JD, 2014 WL 5034292 (N.D. Cal. Sept. 30, 2014)

Here, Defendant's conduct is not excusable: he never responded to informal requests to meet and confer, did not respond to motions, did not respond to discovery, and violated Court orders. Moreover, Defendant was on notice that the court demanded a response and an update as to contact information within fourteen days of its October 25, 2017 Order Granting in Part and Denying in Part Plaintiff's Motion for Sanctions, but Defendant failed to comply. .Consequently, no circumstances suggest that Defendant's failure to appear or respond to the current proceedings is due to excusable neglect.  If the Court dignifies a particular excuse Defendant presents, then Plaintiff respectfully submits that it she is entitled to, among other things, reopen discovery and exercise her rights to obtain evidence from Defendant.

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

**III.   L.R. 16-4.2: [ABROGATED]**

**IV.   L.R. 16-4.3: BIFURCATION OF ISSUES**

Plaintiffs do not seek to bifurcate trial on any issues.  Notwithstanding, Plaintiff does anticipate obtaining a judgment of liability against Defendant pursuant to the default process and then providing the Court separately her argument and evidence supporting her claim for damages.

**V.   L.R. 16-4.4: JURY TRIAL**

Plaintiff is entitled to try this matter in front of a jury, and has timely requested a jury trial.

**VI.   L.R. 16-4.5: ATTORNEYS' FEES**

Plaintiffs seek attorney's fees as the prevailing party because Defendant has forced Plaintiff to litigate this matter without his participation and flouted all efforts to engage in any settlement discussions. 17 U.S.C. § 505.

**VII.   L.R. 16-4.6: ABANDONMENT OF ISSUES**

Because negligent infliction of emotional distress is not an independent tort but is encompassed by the tort of negligence, Plaintiff's claim for negligent infliction of emotional distress is subsumed into her negligence claim, and to the extent required by this Court, Plaintiff therefore abandons a separate claim for negligent infliction of emotional distress.  Notwithstanding, the foregoing, Plaintiff does not abandon any right to pursue damages for emotional distressed that she suffered as a result of Defendant's negligence, and to the extent the Court considers these separate claims, Plaintiff does not abandon this cause of action.

K&L GATES LLP

Dated:  December 18, 2017          By:   /s/ Peter E. Soskin
                                        Seth A. Gold
                                        Peter Soskin

K&L GATES LLP

42

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Attorneys for Plaintiff Jane Doe

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**