Seth Gold (SBN 163220)
seth.gold@klgates.com
Samira Torshizi (SBN 296589)
samira.torshizi@klgates.com
Jonathan Kintzele (SBN 316482)
jonathan.kintzele@klgates.com
K&L Gates LLP
10100 Santa Monica Blvd., Eighth Floor
Los Angeles, CA 90067
T: (310) 552–5000
F: (310) 552–5001

Peter Soskin (SBN 280347)
peter.soskin@klgates.com
K&L Gates LLP
4 Embarcadero Center Ste. 1200
San Francisco, CA 94111
T: (415) 882–8200
F: (415) 882–8220

Attorneys for Plaintiff Jane Doe

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| **JANE DOE**<br><br>Plaintiff,<br><br>v.<br><br>**DAVID K. ELAM II,**<br><br>Defendant. | Case No. 2:14–CV–9788 PSG–SS<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT DAVID K. ELAM, II**<br><br>Date: April 16, 2018<br>Time: 1:30pm<br>Place: 350 West 1st St., Ctrm. 6A<br><br>[Assigned to the Honorable Philip s. Gutierrez]<br><br>*[Filed concurrently with Notice of Motion; Declaration of Peter E. Soskin; and [Proposed] Default Judgment]* |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................. 1

II.     FACTUAL SUMMARY ..................................................... 1

III.    RELEVANT PROCEDURAL HISTORY ........................... 4

        IV.     DISCUSSION .................................................. 6

        A.      The Court Has Personal and Subject Matter Jurisdiction ......................... 6

        B.      The Procedural Requirements for Default Judgment Are Met .................. 6

        C.      The Substantive Requirements for Default Judgment Are Met................ 7

                1.      Plaintiff Will Suffer Prejudice Absent a Default Judgment. ........... 7

        D.      Plaintiff's Well Pleaded Complaint Contains Meritorious Claims........... 8

                1.      Plaintiff's Copyright Infringement Claim ...................................... 8

                2.      Plaintiffs Claim for Online Impersonation with Intent to Harm ....................................................... 10

                3.      Plaintiff's Claim for Intentional Infliction of Emotional Distress................................................ 11

                4.      Plaintiff's Stalking Claim is Meritorious and Well Pleaded ........ 13

        E.      The Sum of Money at Stake Is Not Disproportionately Large. ............... 14

        F.      There Is No Possibility of Disputed Material Facts................................. 14

        G.      Elam's Default Was Not Due to Excusable Neglect. ............................. 15

        H.      Elam's Conduct Frustrates Policies Favoring Merit–Based Decisions. .............................................. 15

        I.      The Remedies Sought by Plaintiff Are Appropriate................................ 16

                1.      Plaintiff Is Entitled to $3,000,000 in Compensatory Damages ..... 16

                2.      Plaintiff Is Entitled to $3,000,000 in Punitive Damages .............. 19

                3.      Plaintiff is Entitled to $450,000 in Statutory Damages................. 21

                4.      Plaintiff Is Entitled to a Permanent Injunction ............................. 23

                5.      Plaintiff Is Entitled to $12,600 in Attorneys Fees and Costs ........ 24

V.      CONCLUSION ................................................ 25

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&M Records v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ........................................................................ 9

*Adriana Int'l Corp. v. Thoeren*,
  913 F.2d 1406 (9th Cir. 1990) ........................................................................ 7

*Ahern v. Dillenback*,
  1 Cal.App. 4th 36 (1991) ............................................................................. 13

*Allen v. Zonis*,
  2017 WL 4142046 [2015–2–15656–0] (Wash. Super. 2017) ......................... 18, 19

*Blizzard Entm't Inc. v. Ceiling Fan Software LLC*,
  28 F. Supp. 3d 1006, 1016 (C.D. Cal. 2013) ................................................. 16

*BMW of N. AM., Inc. v. Gore*,
  517 U.S. 517 U.S. 559, 575 (1996) ........................................................... 20, 21

*Brantley v. Boyd*,
  No. C 07–6139 MMC, 2013 WL 3766911 (N.D. Cal. 2013) ........................ 17

*by Marina Point, Ltd. v. Wolfson*,
  30 Cal. 3d 721 (1982) ................................................................................. 11

*Calder v. Jones*,
  465 U.S. 783 (1984) ...................................................................................... 6

*Phillip Morris U.S.A, Inc. v. Castworld Prods.*,
  219 F.R.D 494 (C.D. Cal. 2003) .............................................................. 14, 15

*Cavalier v. Random House, Inc.*,
  297 F.3d 815 (9th Cir. 2002) ......................................................................... 8

*Columbia Pictures Industries, Inc. v. Fung*,
  710 F.3d 1020 (9th Cir. 2013) ....................................................................... 9

*Danning v. Lavine*,
  572 F.2d 1386 (9th Cir. 1978) ....................................................................... 8

*Derek Andrew, Inc. v. Poof Apparel Corp.,*
   528 F.3d 696 (9th Cir.2008) ................................................................... 22

*Diaz v. Oakland Tribune,*
   139 Cal.App.3d 118 (1983) .................................................... 16, 18, 19, 20

*Doe v. Hofstetter,*
   2012 WL 2319052 (D. Colo. June 13, 2012) .................................. 18, 23

*eBay Inc. v. MercExchange, L.L.C.,*
   547 U.S. 388 (2006) ........................................................................... 23, 24

*Eitel v. McCool,*
   782 F.2d 1470 (9th Cir. 1986) ........................................... 7, 14, 15, 16

*Elektra Entm't Grp. Inc. v. Crawford,*
   226 F.R.D. 388 (C.D. Cal. 2005) ........................................................ 7, 8

*Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.,*
   499 U.S. 340 (1991) ................................................................................. 8

*Fletcher v. W. Nat'l Life Ins. Co.,*
   10 Cal. App. 3d 376 (1970) ................................................................... 12

*Geddes v. United Financial Group,*
   559 F.2d 557 (9th Cir. 1977) .................................................................. 7

*George v. Kasaine,*
   2015 WL 12850542 (C.D. Cal. 2015) ................................................... 7

*Harris v. Emus Records Corp.,*
   734 F.2d 1329 (9th Cir. 1984) .............................................................. 21

*Hernandez v. Madrigal,*
   Case No. 09–cv–0413 MCE (GGH), 2011 WL 6936364 (E.D. Cal.
   Dec. 30, 2011) ......................................................................................... 17

*Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.,*
   129 Cal. App. 4th 1228 (2005) .............................................. 11, 12, 13

*Jackson v. Sturkie,*
   255 F. Supp. 2d 1096 (N.D. Cal. 2003) ............................................... 21

*Jada Toys, Inc.,*
   518 F.3d at 636 (9th Cir. 2008) .............................................................. 8

iii

*James v. Frame*,
   6 F.3d 307 (5th Cir. 1993) .................................................................................. 16, 19

*Kiseskey v. Carpenters' Trust for S. Cal.*,
   144 Cal. App. 3d 222 ................................................................................................ 12

*Leviston v. Jackson III*,
   2015 WL 10102428 (N.Y. Sup. 2015) ...................................................................... 18

*Live Face on Web, LLC v. AZ Metroway, Inc.*,
   No. 515CV01701CAS-KKX, 2016 WL 4402796 (C.D. Cal. Aug. 15,
   2016) .......................................................................................................................... 21

*Microsoft Corp. v. McGee*,
   490 F. Supp. 2d 874 (S.D. Ohio 2007) ..................................................................... 14

*Mullane v. Central Hanover Trust Co.*,
   339 U.S. 306 (1950) ................................................................................................... 15

*Newby v. Alto Riviera Apartments*,
   60 Cal. App. 3d 288 (1976) ....................................................................................... 11

*Patel v. Hussain*,
   485 S.W.3d 153 (Tex. App. 2016) ............................................................................ 18

*PepsiCo, Inc. v. Cal. Sec. Cans*,
   238 F. Supp. 2d 1172 (C.D. Cal. 2002) .............................................................. 14, 15

*PepsiCo v. Triunfo-Mex, Inc.*,
   189 F.R.D. 431 (C.D. Cal. 1999).................................................................................. 7

*Powell v. Blackrock Asset Mgmt., LLC*,
   No. SACV 11-0517-JST, 2011 WL 4551450 (C.D. Cal. Sept. 30,
   2011) ..................................................................................................................... 16, 18

*Roby v. McKesson Corp.*,
   47 Cal. 4th 686 (Cal. 2009) ....................................................................................... 20

*Rode v. Credio*,
   No. CV-14-02354-PHX-SRB, 2016 WL 5339682 (D. Ariz. Aug. 3,
   2016) .......................................................................................................................... 20

*Rosen v. Medlin*,
   No. 2:15-CV-05789-ODW-JC, 2016 WL 1715179 (C.D. Cal. Apr.
   27, 2016) .................................................................................................................... 24

iv

*Sharpe v. Cureton*,
  319 F.3d 259 (6th Cir. 2003) ..................................................................... 24

*Sweet People Apparel, Inc. v. Zipper Clothing*,
  No. CV 12-02759-ODW CWX, 2012 WL 1952842 (C.D. Cal. May
  31, 2012) ................................................................................................... 21

*Symonds v. Mercury Sav. & Loan Ass'n*,
  225 Cal. App. 3d 1458 (1990) .................................................................. 12

*Taylor v. Franko*,
  2011 WL 2115836 (D. Haw. May 26, 2011) .............................................. 18

*Taylor v. Superior Court*,
  24 Cal. 3d 890 (1979) ............................................................................... 19

*TeleVideo Sys., Inc. v. Heidenthal*,
  826 F.2d 915 (9th Cir. 1987) ....................................................................... 1

*Three Boys Music Corp. v. Bolton*,
  212 F.3d 477 (9th Cir. 2000) ....................................................................... 8

*Tillamook County Smoker, Inc. v. Tillamook County Creamery Ass'n*,
  465 F.3d 1102 (9th Cir. 2006) ................................................................... 14

*Truong Giang Corp. v. Twinstar Tea Corp.*
  2007 WL 1545173 (N.D. Cal. July 23, 2007) ........................................... 15

*United States v. W. T. Grant Co.*,
  345 U.S. 629 (1953) .................................................................................. 23

*Wherely v. Dechart*,
  2013 WL 6248580 (S.C. Ninth Judicial Cir. 2013) [1311260015] ............ 18

*Yowan Yang v. ActioNet, Inc*,
  No. CV1400792ABPJWX, 2017 WL 2117028 (C.D. Cal. Jan. 23,
  2017) ......................................................................................................... 20

**Statutes**

15 U.S.C. § 1121 ............................................................................................. 6

17 U.S.C. §§ 102(a)(5), (a)(6) ......................................................................... 8

17 U.S.C. § 106 .............................................................................................. 9

17 U.S.C. § 201(a) ........................................................................................... 8

17 U.S.C. § 411(a) ........................................................................................... 8

17 U.S.C. § 412 ............................................................................................. 22

17 U.S.C. § 504(c) ......................................................................................... 21

17 U.S.C. § 504(c)(3)(A) ............................................................................... 22

17 U.S.C. § 505 ............................................................................................. 25

28 U.S.C. § 1332 ............................................................................................. 6

28 U.S.C. § 1367 ............................................................................................. 6

Cal. Civ. Code § 1708.7 ..................................................................... 8, 13, 19

Cal. Civ. Code § 1714(a) .............................................................................. 13

Cal. Civ. Code § 3294 ................................................................................... 19

Cal. Pen. Code § 528.5 ................................................................................. 19

Cal. Pen. Code §§ 528.5(a), (c) .................................................................... 10

**Other Authorities**

Adrienne N. Kitchen, THE NEED TO CRIMINALIZE REVENGE PORN: HOW A
      LAW PROTECTING VICTIMS CAN AVOID RUNNING AFOUL OF THE FIRST
      AMENDMENT, *90 Chi.-Kent L. Rev.* 247, 249 (2015) .............................. 17

Fed. R. Civ. P. 8(a)(3) ................................................................................... 16

Fed. R. Civ. P. 36(a)(3) ................................................................................. 14

Fed. R. Civ. P. 54(c) ..................................................................................... 16

Fed. R. Civ. P. 55 ........................................................................................... 6

Fed. R. Civ. P. 55(a) ....................................................................................... 6

Fed. R. Civ. P. 55(b) ..................................................................................... 15

Fed. R. Civ. P. 55(b)(2) ......................................................................... 1, 6, 7

L.R. 55–1 ........................................................................................................ 7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT CASE NO. 2:14–CV–9788 PSG–SS

L.R. 55–2 ................................................................................................ 6

L.R. 55–3 .............................................................................................. 24

L.R. 83-2.4 ........................................................................................... 15

Lorelei Laird, *Victims are Taking on 'Revenge Porn' Websites for Posting Photos They Didn't Consent To*, A.B.A. J. (Nov. 1, 2013) ........................ 17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT CASE NO. 2:14–CV–9788 PSG–SS

I. **<u>INTRODUCTION</u>**

Defendant David K. Elam, II's ("Elam" or "Defendant") revenge porn campaign involved a calculated pattern of tactics designed to terrify and, in his own words, cause Plaintiff to want to kill herself. Defendant created fake online dating profiles using Plaintiff's name and sexually explicit photographs and encouraged unknown men to send her messages and images and to visit her home expecting sexual acts. Defendant impersonated people in Plaintiff's network and using their names sent to Plaintiff's mother and classmates Plaintiff's videos and photos. As he intended, Defendant caused Plaintiff severe emotional distress and other damages.

Plaintiff filed suit in December 2014. Elam initially appeared through counsel but, in August 2016, his counsel withdrew based on his failure to cooperate. In the withdrawal order, the Court noted Elam's conduct was harming the administration of justice. Since that time, Elam's conduct has only gotten worse and has reflected an utter disregard for the Judiciary. Elam not only ignored all discovery requests and motions filed against him, but he refused to comply with this Court's orders, including an order requiring him to provide *to the Court* his reasons for failing to participate in the action and his updated contact information. The Court entered default and now Plaintiff seeks judgment pursuant Rule 55(b) of the Federal Rules of Civil Procedure.

II. **<u>FACTUAL SUMMARY</u>**

Since default has been entered against Elam, the well–pleaded factual allegations set forth in the Complaint are accepted as true, aside from those related to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Those allegations, along with other evidence, prove the following:

Plaintiff and Elam were involved in a long distance romantic relationship from approximately the fall of 2012 to early 2013, while Plaintiff was in school in Southern California and Elam lived in Virginia. (First Amended Complaint ECF No. 11 ("FAC"), ¶ 8.) During their relationship, to maintain intimacy given the distance, Plaintiff and Elam sent each other sexually explicit digital photographs (the "Media.")

1

(*Id*.) Elam agreed to keep the Media private. (*Id*.; *see also* Declaration of Peter E. Soskin ("Soskin Dec."), Exh. 4, No. 4.) Elam understood Plaintiff owned all rights to the Media when she sent it to him. (*Id*. Exh. 4 No. 5).

In early 2013, Elam ended the relationship. (FAC ¶ 9.) Almost immediately thereafter, Elam accused Plaintiff of cheating on him, and implied he could spy on Plaintiff through her phone. (Declaration of Jane Doe ("Doe Dec."), ¶ 18.) On May 8, 2013, Elam telephoned Plaintiff and threatened to ruin her life:

> "Fuck you. . . . I mean like, fuck this whatever . . . you're done you're ruined cause I will see to it after this . . . fuckin . . . I'll put it this way, fuckin . . . it would take an act of God for you to pass [that test]. It would take an act of God for you to make it through . . . school without killing yourself after what I do to you."

(Doe Dec. ¶ 19, Exh 1 (recording) at 30:17–30:29; Soskin Dec. Exh. 4 Exh. 10;) Elam then sent Plaintiff a text message hinting at his upcoming conduct: "That awkward moment when errbody (sic) seent (sic) what I seent (sic)." (Doe Dec. ¶ 20, Exh. 2). Elam immediately began his campaign of terror against Plaintiff.

The day after Elam threatened Plaintiff over the phone, without Plaintiff's permission, Elam created a profile on OKCupid, an online dating site, using Plaintiff's identity. (FAC ¶ 10; Doe Dec. ¶ 21, Exh. 3). Creating this profile using Plaintiff's name and pictures, Elam answered questions indicating Plaintiff sought indiscriminate sexual encounters and that she lacked self–esteem. (FAC ¶¶ 10–11; Doe Dec. Exh. 4; Soskin Dec. Exh. 4 Nos. 13–16). Masquerading as Plaintiff, Elam engaged with other OKCupid users, provided Plaintiff's mobile phone number and address, and solicited them to send sexual images of themselves and to visit Plaintiff's apartment to have sex. (FAC ¶ 10, Soskin Dec. Exh. 4 No. 16; Doe Dec. Exhs. 3–4). Believing they were speaking to Plaintiff and fueled by Elam's promises of sex, some 30 different complete strangers messaged Plaintiff's cell phone; many messages containing pictures of men's genitals or other explicit images, others stating that the sender was on his way to Plaintiff's apartment. (FAC ¶ 12; Soskin Dec. Exh. 4 No. 17–18; Doe Dec. Exh 4). Elam impersonated Plaintiff on the OKCupid profile intending for it and

communications therefrom to appear to be from Plaintiff, and that Plaintiff would thereby be harmed. (Soskin Dec. Exh. 4 Nos. 19–22).

On May 10, 2013, without Plaintiff's permission, Elam created a profile on xHamster, a pornography website, using Plaintiff's image so others would believe she created it. (FAC ¶ 13). That same day, Elam uploaded the Media to xHamster for public viewing. (*Id*.). Less than a day later, Plaintiff received a text message from an xHamster user. (Doe Dec. ¶ 23 Exh. 5). Aside from the humiliation, Plaintiff was terrified strangers knew her personal contact information, including her exact apartment number; she was scared for her life and even spent a night against her sofa facing her front door in fear that one of these men may attack her. (Doe Dec. ¶ 24).

On May 10 and 11, 2013, Elam used the website addthis.com to send emails to Plaintiff's mother and classmates in the name of others ("spoofing"), including Plaintiff's classmates and the former dean of her school containing links to the Media. (FAC ¶ 14; Doe Dec. ¶ 26, Soskin Dec. Exh. 4 Nos. 33–37). In at least one of those emails, Elam admonished Plaintiff's mother to "have a serious conversation with what she puts on the internet." (FAC ¶ 14; Doe Dec. ¶ 27, Exh. 7; Declaration of Plaintiff's Mother ("Mother Dec."), ¶ 5;). Elam intended the recipients of those spoofed emails to believe they were sent by the persons Elam impersonated. (Soskin Dec. Exh. 4 Nos. 38–40). Elam also distributed the Media to Plaintiff's social network using a Facebook Profile he created in the name of someone in Plaintiff's social network. (Soskin Dec. Exh. 4 Nos. 29–32; Doe Dec. ¶ 36, Exh. 13).

On Mother's Day (May 12, 2013), the day after sending her a spoofed email with a link to the Media, Elam called Plaintiff's mother and admitted he sent the spoofed email the previous day and uploaded the Media online. (FAC ¶ ¶ 8, 13; Mother Dec. ¶ 6; Soskin Dec. Exh. 4 Nos. 35, 49–51). Elam admitted he threatened to make Plaintiff kill herself, explaining he was exacting payback because he believed Plaintiff cheated on him. (Mother Dec. ¶ 6). After Plaintiff's mother pleaded with Elam to stop, he promised he would remove the Media from the internet. (*Id*.).

On May 13, 2013, Plaintiff applied for and was granted a Temporary Restraining Order which ordered Elam to refrain from impersonating Plaintiff and to remove the Media from the internet. (Doe Dec. Exh. 8). Several weeks later, the court granted Plaintiff's request for a permanent restraining order. (*Id*. Exh. 9).

On a May 14, 2013 call with Plaintiff, Elam admitted he uploaded the Media to various pornographic websites and promised to take it down. (Doe Dec. ¶ 31). However, *after* this conversation, he uploaded the Media to additional websites and even included links to Plaintiff's actual email, Facebook, Instagram, and LinkedIn accounts. (FAC ¶ 24; Soskin Dec. Exh. 4 Nos. 42–89; Doe Dec. Exhs. 10, 14–24). He included identifying information to ensure others would believe Plaintiff created and communicated from those profiles and to cause Plaintiff further distress from repeated contact and expectations of sex from strangers. (Soskin Dec. Exh. 4 Nos. 42–89).

When Elam created the various profiles, distributed the Media, communicated with others online, and impersonated Plaintiff and others, he intended to accomplish the following: (a) cause Plaintiff extreme emotional distress; (b) harm, intimidate, threaten and/or defraud Plaintiff; (c) place her in a reasonable fear for her safety; and (d) intrude onto her privacy. (*See generally* Soskin Dec. Exh. 4) He succeeded and Plaintiff suffered severe emotional distress: she became depressed, and feels her relationships with her family have been irreparably damaged; she constantly worries she will never have a healthy romantic relationship and fears she will be haunted by these events personally and professionally for the rest of her life. (*Id.*; Doe Dec. ¶ 42).

When Plaintiff learned that Elam was copying her intimate photographs on the internet, she learned that by filing copyright registrations, she would be able to demand that her images be taken down from a website under the Copyright Act. Therefore, Plaintiff filed and obtained three registrations for various photographs she sent Defendant during their relationship. (Doe Dec., ¶¶ 39-42 Exhs. 25-27).

## III.   **RELEVANT PROCEDURAL HISTORY**

On December 22, 2014, Plaintiff filed this action, alleging the following claims:

4

(1) Copyright Infringement; (2) Online Impersonation with Intent to Cause Harm; (3) Intrusion; (4) Intentional Infliction of Emotional Distress; (5) Negligence; (6) Negligent Infliction of Emotional Distress; (7) Stalking (the "Action"). Plaintiff filed a first amended complaint, alleging the same claims. (ECF 11). Plaintiff's claims are based on Elam's revenge porn campaign, as described above. (*See generally Id.*). Plaintiff seeks damages as well as injunctive relief. (*Id.*).

On May 22, 2015, Elam appeared through counsel and filed an answer, largely refusing to answer substantive allegations in Plaintiff's complaint, and asserting the Fifth Amendment privilege against self–incrimination. (*See generally* ECF 29). Similarly, Elam objected to all Requests for Production Plaintiff served and asserted the Fifth Amendment Privilege. (Soskin Dec. Exhs. 1–2).

On June 15, 2016, Elam's attorneys moved to withdraw due to Elam's "failure to pay" and "failure to communicate with" them. (ECF 68 at 1–2). On August 3, 2016, the Court granted that motion and noted that "Elam's lack of cooperation with [his counsel] has harmed the administration of justice." (ECF 75 at 2). Since then, Defendant has not provided the Court or Plaintiff's counsel with any of his contact information and has not responded in any manner to any of Plaintiff's counsel's communications, any discovery, or any motions. *Id*. Relevant to this Motion, Elam failed to respond to Plaintiff's Requests for Admission (Soskin Dec. ¶ 7, Exh. 4), failed to comply with this Court's September 8, 2017 Order requiring the production of documents (ECF 102; Soskin Dec., ¶ 6), and failed to comply with two Court orders requiring the payment of sanctions (ECF 114 and 134; Soskin Dec. ¶ 9). Perhaps most importantly, and a reflection of Elam's disrespect for the Judiciary, Elam failed to comply with this Court's order requiring that Elam *report to the Court* the reason he has refused to participate in this litigation and his current address. (ECF 114, Soskin Dec., ¶ 9.) There is no question that Elam received that Court order: he signed a FedEx receipt for it. (*Id*. ¶ 8).

On January 19, 2018 default was entered against Elam. (ECF 135).

## IV.   **DISCUSSION**

### A.   **The Court Has Personal and Subject Matter Jurisdiction**

Courts have personal jurisdiction over individuals who commit intentional and tortious acts within the state. *Calder v. Jones*, 465 U.S. 783, 788–89 (1984). The Court has personal jurisdiction over Elam because he directed his intentional and tortious acts within the State of California and he knew or should have known these activities would cause harm in California which they did. (*See* FAC ¶ 8).

Courts have original subject matter jurisdiction over claims arising under federal law and supplemental jurisdiction over sufficiently related state law claims. 15 U.S.C. § 1121; 28 U.S.C. § 1367. The Court can exercise federal question jurisdiction here because Plaintiff alleges a federal claim for Copyright and can exercise supplemental jurisdiction because Plaintiff alleges state law claims which stem from the same underlying acts as the federal claim. (*See* FAC*.*) The Court also has diversity jurisdiction: Plaintiff is a citizen of California, and seeks an amount greater than $75,000 against Elam, a citizen of Pennsylvania. 28 U.S.C. § 1332.

### B.   **The Procedural Requirements for Default Judgment Are Met**

Under the Federal Rules of Civil Procedure, there is a two–step process for entry of a default judgment. Fed. R. Civ. P. 55. First, the clerk of court enters default where a plaintiff demonstrates that a defendant has failed to plead or otherwise defend the action. Fed. R. Civ. P. 55(a). Second, other than cases involving liquidated damages, a plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2). In the Central District, such party applying for unliquidated damages may submit evidence of the amount of damages by declarations. L.R. 55–2. The Central District's Local Rules also require a motion for default judgment to include a declaration stating (1) when and against what party default was entered, (2) the identification of the pleading to which default was entered, (3) whether the party in default is an infant or incompetent person, (4) that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply, and (5) that notice has been served on the

1  defaulting party if required by Fed. Rule of Civ. Proc. 55(b)(2). L.R. 55–1.

2      Plaintiff has met all procedural requirements for entry of a default judgment.

3  The Court entered Default against Elam on January 19, 2018. (*See* ECF 135, Request

4  for Judicial Notice, Exh. C). Plaintiff now moves the Court for default judgment, and

5  includes the Declarations of Peter Soskin, Plaintiff Jane Doe, and Plaintiff's Mother,

6  which satisfy the additional requirements imposed by the Local Rules.

7      **C.    The Substantive Requirements for Default Judgment Are Met**

8      Factors a district court should consider in evaluating a motion for entry of

9  default judgment include: "(1) the possibility of prejudice to the plaintiff; (2) the

10  merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the

11  sum of money at stake in the action; (5) the possibility of a dispute concerning

12  material facts; (6) whether the default was due to excusable neglect; and (7) the strong

13  policy underlying the Federal Rules of Civil Procedure favoring decisions on the

14  merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). A district court

15  need not make detailed findings of fact in the event of a default judgment, *Adriana*

16  *Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990), and upon entry of a

17  default, well–pleaded allegations in the complaint regarding liability are deemed true.

18  *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).

19      "In applying this discretionary standard, default judgments are more often

20  granted than denied." *PepsiCo v. Triunfo–Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal.

21  1999). As discussed below, all favor entry of judgment here.

22      1.    Plaintiff Will Suffer Prejudice Absent a Default Judgment.

23      Prejudice exists where a plaintiff is deprived of using the judicial system to

24  redress her rights. *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D.

25  Cal. 2005). "A party is prejudiced when the disobedient party's actions impair the

26  non–offending party's ability to go to trial or threaten to interfere with the rightful

27  decision of the case." *George v. Kasaine*, 2015 WL 12850542, at *2 (C.D. Cal. 2015).

28  The first *Eitel* factor heavily favors default judgment against Elam. In the absence of a

7

default judgment, Plaintiff would be entirely "denied the right to judicial resolution of the claims presented," *Elektra Entm't Grp.*, 226 F.R.D. at 392, because her legal rights are otherwise hostage to Elam's refusal to participate in the action: he has disappeared, failed to participate, and violated numerous Court orders. Thus, Plaintiff will be severely prejudiced if the Court declines to enter a default judgment.

### D.   Plaintiff's Well Pleaded Complaint Contains Meritorious Claims

Plaintiff alleges seven claims against Elam: (1) copyright infringement, (2) impersonation online with intent to cause harm, (3) intrusion, (4) infliction of severe emotional distress, (5) negligence, (6) negligent infliction of emotional distress, and (7) stalking under Cal. Civ. Code §1708.7.[1] The complaint's allegations are to be taken as true at default, and Elam's default functions as an admission of Plaintiff's well–pleaded allegations of fact. *See Danning v. Lavine*, 572 F.2d 1386, 1386 (9th Cir. 1978). Plaintiff's allegations and other evidence presented show that the Complaint contains meritorious claims supporting judgment in Plaintiff's favor.

### 1.   Plaintiff's Copyright Infringement Claim

To prevail on her copyright infringement claim, Plaintiff must prove (1) she owns a valid registered copyright, and (2) that protected elements of her work was copied. *Jada Toys, Inc.*, 518 F.3d at 636 (9th Cir. 2008) (citing *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002)); *see also Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); 17 U.S.C. § 411(a).

Federal copyright law protects any original work of authorship fixed in a tangible medium of expression, including photographs. 17 U.S.C. §§ 102(a)(5), (a)(6). The author of such a work is the initial owner of the copyright. 17 U.S.C. § 201(a). Here, Plaintiff is the author of and holds three Copyright Registrations covering the Media. (Doe Dec., 25–27, Exh. 25–27)**.** Plaintiff pursues three of her registrations in this action: Registration Nos. VAu 1-138-755,  VAu 1-146-596, and VAu 1-152-473. (*Id*.) Plaintiff' registrations are *prima facie* evidence of a valid copyright. *Three Boys*

---

[1] Plaintiff is not pursuing her intrusion claim.

*Music Corp. v. Bolton*, 212 F.3d 477, 488-89 (9th Cir. 2000).

Plaintiff holds the exclusive right to reproduce her works in copies, prepare derivative works, and to display the works, among other things. 17 U.S.C. § 106. Copying photographs and videos by uploading them to internet websites constitutes copyright infringement. *Columbia Pictures Industries, Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013), citing *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001). Here, Elam infringed Plaintiff's copyrights when he copied and uploaded the Media to the Internet. (Soskin Dec., Exh. 4 Nos. 22-24, 42-44, 49, 52-53, 58-60, 65-66, 78-79, 84-85). Elam copied, published, distributed, and displayed at least the following copyrighted Media on certain websites as follows:[2]

| **Date** | **Website** | **Photo and Corresponding Registration** |
|---|---|---|
| 5/13 | Facebook.com | Photo 1 (topless, on bed) - '596 (5) and '755 (25)<br>Photo 2 (topless; on bed, arm) - '596 (4) and '755 (23) |
| 6/3-9/13 | Thedirty.com | Photo 1 (topless, standing) - '596 (11) and '755 (8)<br>Photo 2 (topless; on bed, arm) - '596 (4) and '755 (23)<br>Photo 3 (on bed, red) - '596 (12) and '755 (79)<br>Photo 4 (on bed, hearts) - '596 (6) and '755 (25)<br>Photo 5 (sunglasses) - '755 (3) |
| 6/25/13 | Ugotposted.com | Photo 1 (sunglasses) - '755 (3)<br>Photo 2 (on bed, red) - '596 (8)* and '755 (82)<br>Photo 3 (on bed, red) - '596 (12) and '755 (79)<br>Photo 4 (red underwear) - '755 (55)<br>Photo 5 (topless, standing) - '755 (7)<br>Photo 6 (topless, standing, necklace) - '755 (8)<br>Photo 7 (topless, on bed) - '596 (5) and '755 (25)<br>Photo 8 (topless; on bed, arm) - '596 (4) and '755 (23)<br>Photo 9, 10 - N/A |
| 7/9/17 | Tumblr.com | Photo 1 (mirror) - N/A<br>Photo 2 (topless; on bed, arm) - '596 (4) and '755 (23)<br>Photo 3 (topless, on bed) - '596 (5) and '755 (25) |

[2] In the chart, the "Date" column is the date the publication was first made. The "Website" column is the website address. The "Photo and Corresponding Registration" column sets forth the photo in the order it appears for the website in that row followed by a brief description of the photo and the registration number which includes the photo that is referenced. Because each registration in the chart contains multiple photos, the parenthetical after the registration number directs the Court where, in the order of photos for such registration, the listed photo appears.

| | | Photo 4 (topless, standing) - '755 (7) |
| | | Photo 5 (topless, standing, necklace) - '755 (8) |
| | | Photo 6 (glasses, shirt) - N/A |
| | | Photo 7 (yellow dress) - N/A |
| | | Photo 8 (genitals) - N/A |
| | | Photo 9 (toy) - N/A |

(*Id.*; Doe Dec., ¶ 39-42 Exh. 28). Thus, Elam is liable for copyright infringement.

### 2.    Plaintiffs Claim for Online Impersonation with Intent to Harm

"[A] person who suffers damage or loss . . . [caused by] any person who knowingly and without consent credibly impersonates another actual person through or on an Internet Web site or by other electronic means for purposes of harming, intimidating, threatening, or defrauding another person" may bring a civil action for damages or injunction. Cal. Penal Code §§ 528.5(a), (c).

Elam non–consensually impersonated Plaintiff in order to "maximize [her] harassment and intimidation." (FAC ¶ 36, 38; Soskin Dec. Exh. 4 No. 21; Doe Dec. ¶ 22, Exh. 4). Elam impersonated Plaintiff while interacting with men online. Through the OKCupid profile, he solicited men for sex, and posted Plaintiff's personal contact information so men would believe Plaintiff was using the OKCupid Profile in order to engage in indiscriminate sexual activity. (FAC ¶ 37; Soskin Dec. Exh. 4 No. 20; Doe Dec. ¶ 21–22, Exh. 4). Elam also used spoofed emails from Plaintiff's classmates and former school dean to email links to the Media to her mother and classmates. (FAC ¶ 36; Soskin Dec. Exh. 4 Nos. 33–37; Doe Dec. ¶¶ 26–27, Exh. 7; Mother Dec. ¶ 6). Given that Elam spoofed these emails, he concedes they did not consent to impersonation. (FAC ¶¶ 14–15, Answer ¶¶ 14–15 Soskin Dec. Exh. 4 Nos. 33–37).

Elam's impersonation caused Plaintiff to receive direct communications from unknown men, some of whom sent sexual photos and others who told Plaintiff they were on their way to meet her. (FAC ¶ 12, 37; Soskin Dec. Exh. 4 No. 16; Doe Dec. ¶ 21, Exh. 4). Elam's impersonation was done to intimidate, threaten, and/or defraud and harm Plaintiff. (*See generally* Soskin Dec. Exh. 4). And he succeeded, because

10

Plaintiff suffered intense distress and anxiety, at times fearing for her life watching her apartment door thinking that someone would imminently arrive to attack her. (Doe Dec. ¶ 24; FAC ¶ 38) Elam's conduct with respect to the OkCupid profile and other impersonations supports Plaintiff's claim for online impersonation.[3]

### 3.   Plaintiff's Claim for Intentional Infliction of Emotional Distress

The tort of intentional infliction of emotional distress requires Plaintiff to prove: "(1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal. App. 4th 1228, 1259 (2005). Plaintiff's allegations and other evidence establish this claim.

***Elam's Conduct Was Outrageous***.  Elam's conduct was outrageous under any of the three different types of outrageous conduct identified by California courts:

> Behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress.

*Newby v. Alto Riviera Apartments*, 60 Cal. App. 3d 288, 296 (1976) *disapproved of on other grounds by Marina Point, Ltd. v. Wolfson*, 30 Cal. 3d 721 (1982). Although Plaintiff need not show that all three of the factors described, they all apply to Elam's conduct: Elam promised that his acts would result in Plaintiff feeling like she would kill herself. (FAC ¶ 9; Doe Dec. ¶ 19 Exh. 1; Soskin Dec. Exh. 4 Nos. 7–10). Elam admittedly distributed the Media so it would be publicly accessible, impersonated Plaintiff, and publicized Plaintiff's private contact information to encourage unknown men to visit Plaintiff with the expectation that they would engage in a sexual

---

[3] The online impersonation claim requires that Plaintiff suffer damage or loss.  Because all of Plaintiff's tort claims require damage or injury and because Plaintiff's damages and injuries are the same for all such claims, Plaintiff addresses this element for all claims in the Remedies section of this motion.  I., *infra*.

relationship with her. (Soskin Dec. Exh. 4 Nos. 42-89; Doe Dec. ¶ 21; Mother Dec. ¶ 6). Elam knew Plaintiff discovered her brother's body shortly after his suicide and understood Plaintiff's resulting depression and extreme sensitivity towards suicide. (Doe Dec. ¶ 19). Elam intentionally exploited these areas of fragility and acknowledged his actions would cause Plaintiff incredible—potentially fatal—mental distress. (Soskin Dec. Exh. 4 Nos. 7–10; Doe Dec. ¶ 19, Exh. 1). Elam's conduct was clearly outrageous. (FAC ¶ 48). Less extreme conduct has been deemed sufficiently outrageous by California courts. *See Symonds v. Mercury Sav. & Loan Ass'n*, 225 Cal. App. 3d 1458, 1469 (1990) (defendant continued threatening phone calls to plaintiff, despite being told to only talk to counsel and despite knowing of plaintiff's poor: outrageous conduct); *Kiseskey v. Carpenters' Trust for S. Cal.*, 144 Cal. App. 3d 222, 229–30 (threats of physical violence sufficiently outrageous conduct).

***Elam Intended to Cause Plaintiff Emotional Distress***.  Elam's conduct rises to a level beyond simple intent. Indeed, his malicious intent could not have manifested any clearer than when he told Plaintiff, on the eve of embarking on his comprehensive plan designed to ruin Plaintiff's life, that she likely would kill herself when he was done with his campaign. (FAC ¶ 9 Soskin Dec. Exh. 4 Nos. 7–10; Doe Dec. ¶ 19, Exh. 1). Elam followed through: he (1) created and communicated with others on dating profiles while impersonating Plaintiff; (2) uploaded the Media to websites; and (3) impersonated others and distributed links to the Media. He intended to accomplish the following: (a) cause Plaintiff extreme emotional distress; (b) harm, intimidate, and threaten Plaintiff; (c) place Plaintiff in a reasonable fear for her safety; and (d) intrude onto Plaintiff's privacy. (*See generally* Soskin Dec. Exh. 4). And he succeeded.

***Elam Caused Plaintiff to Suffer Emotional Distress***.  Emotional distress includes all "highly unpleasant mental reaction[s]," including "fright, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment or worry." *Fletcher v. W. Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376, 397 (1970); *Huntingdon Life Scis.*, 129 Cal. App. 4th at 1242 (website entries listing plaintiff's address and encouraging visitors to

threaten plaintiff created sufficient emotional distress). Elam's conduct both proximately and actually caused Plaintiff to suffer severe emotional distress. (FAC ¶¶ 26, 48–50).  But for Defendant's exploitation of her trust, Plaintiff would not have sunk into a deep depression. (Doe Dec. ¶42). Her declaration sets forth in great detail the distress she suffered.  She felt like her career and personal life were permanently destroyed and spent significant amounts of time in bed. (*Id.;* FAC ¶ 26*.*). She feels she cannot maintain a healthy relationship, and even if she were to meet someone special, he would eventually leave her once he found out about this episode of her life. (*Id.*). As demonstrated by his own warning, Elam's conduct foreseeably caused and intended to cause these injuries; he "intended to cause [Plaintiff] emotional distress and acted with reckless disregard for the probability that [Plaintiff] would suffer emotional distress" as described above. (FAC at ¶ 49).[4]

### 4.  Plaintiff's Stalking Claim is Meritorious and Well Pleaded

Stalking requires that (1) the defendant engaged in conduct intended to harass Plaintiff; (2) defendant's conduct caused the plaintiff to fear for her safety; and/or suffer substantial emotional distress, and a reasonable person would have suffered substantial emotional distress as a result of defendant's conduct; (3) as a part of defendant's conduct, he made a credible threat either (i) intended to place plaintiff in reasonable fear for her safety; or (ii) that was in reckless disregard for plaintiff's safety; and, (4) plaintiff clearly and definitively demanded that defendant cease and abate his pattern of conduct and defendant persisted. Cal. Civ. Code §1708.7.

The facts supporting intent for the emotional distress claim also support show that Elam intended to cause Plaintiff harm, fear for her safety, and severe emotional distress. (FAC ¶¶ 61–68). Moreover, *any* reasonable person would have suffered substantial emotional distress if she had to endure the same systematic terrorism Elam aimed at Plaintiff. (FAC ¶ 64). Further, Elam made a credible threat to make

---

[4] In the very least, however, Elam's conduct was negligent, and the facts support a claim of negligence.  *See Ahern v. Dillenback*, 1 Cal.App. 4th 36, 41 (1991); Cal. Civ. Code § 1714(a).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT CASE NO. 2:14–CV–9788 PSG–SS

Plaintiff's life so miserable that she would want to kill herself. (FAC ¶ 66 Soskin Dec. Exh. 4 Nos. 7–10; Doe Dec. ¶¶ 18–19, Exh. 1). Plaintiff unsuccessfully implored Elam to cease his conduct with pleas from her mother and a restraining order; and, though he promised he would, he continued uploading the Media and impersonating people to continue terrorizing Plaintiff. (FAC ¶ 17, 18; Mother Dec. ¶ 6).

For the reasons stated, Plaintiff has established that the second and third *Eitel* factors weigh in favor of the Court entering a default judgment as to these claims.

### E.   The Sum of Money at Stake Is Not Disproportionately Large.

To evaluate whether judgment is appropriate under *Eitel*, "a court must consider the amount of money at stake in relation to the seriousness of Elam's conduct." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176–77 (C.D. Cal. 2002). Also, "statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed." *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 882 (S.D. Ohio 2007). In this case, as discussed below, Plaintiff seeks a reasonable sum of compensatory damages, punitive damages, and attorneys' fees and costs. Plaintiff's request for damages is based on evidence in the record and within the range of applicable precedent. Thus, this factor weighs in favor of a default judgment.

### F.   There Is No Possibility of Disputed Material Facts.

Here, Plaintiff's Complaint alleges with specificity all the facts necessary to support her claims, as outlined above, and no dispute has been raised as to the material allegations of the Complaint. Plaintiff provides additional evidence to support her claims, including based on her own investigation and Requests for Admissions which are deemed admitted. *See* Fed. R. Civ. P. 36(a)(3); *Tillamook County Smoker, Inc. v. Tillamook County Creamery Ass'n*, 465 F.3d 1102, 1112 (9th Cir. 2006). Thus, the fifth *Eitel* factor favors entry of a default judgment. *See Phillip Morris U.S.A, Inc. v. Castworld Prods.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003) (likelihood of any genuine issue is remote after entry of default).

### G.   Elam's Default Was Not Due to Excusable Neglect.

Whether a defendant's default was due to excusable neglect depends primarily upon whether due process has been provided, which requires notice of an action and an opportunity to object before final judgment is entered. *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314 (1950). Elam appeared in the action through counsel and filed an answer on May 22, 2015. (ECF 29.) In August of 2016, Elam's attorneys withdrew because he failed to pay and communicate. (ECF 68.) At that time, he was required to update his information with the Court (L.R. 83-2.4), but he failed to do so. Since then, Plaintiff made extensive efforts to contact Elam, including serving him eleven times by various means, including email, mail, and telephone. (ECF 134.) In October 2017, Plaintiff sent Elam via FedEx a letter enclosing a Court order requiring him to provide *the Court* an explanation why he failed to participate and updated contact information. An "H. Elam" signed for the delivery. (*Id*.) Elam failed to comply with the Court's Order. This case could not present a clearer instance of a defendant actively refusing to participate despite having notice of the action. Default was entered because Elam chose to not defend himself, not because of excusable neglect. The sixth *Eitel* factor heavily favors entry of a default judgment.

### H.   Elam's Conduct Frustrates Policies Favoring Merit–Based Decisions.

Though cases should be decided on their merits where possible, such preference must give way when it is not reasonably possible to reach such a decision. *Truong Giang Corp.v Twinstar Tea Corp.*, 2007 WL 1545173 (N.D. Cal. July 23, 2007), at *13; *see Castworld Prods.*, 219 F.R.D. at 501 ("[T]he mere existence of Fed. R. Civ. P. 55(b) indicates that [this] factor is not alone dispositive."); *Cal. Sec. Cans*, 238 F. Supp. 2d at 1177("Defendant's failure to answer [Plaintiff's] Complaint makes a decision on the merits impractical, if not impossible . . . . [T]ermination of a case before hearing the merits is allowed whenever a defendant fails to defend an action."). Here, as shown, Elam actively refused to participate in the Action. He deliberately violated Court orders and Federal and Local Rules, thereby harming the

1   administration of justice and rejecting an adjudication on the merits. Without a default

2   judgment, Plaintiff would have no recourse and Elam would be rewarded for his

3   conduct. Accordingly, entering a default judgment would further the interests of the

4   seventh *Eitel* factor, because it would result in an outcome more closely aligned with a

5   merits-based decision, would provide Plaintiff justice, and would avoid encouraging

6   Defendants to shun the judicial system.

7   **I.   The Remedies Sought by Plaintiff Are Appropriate.**

8   Plaintiff seeks appropriate remedies in her Motion. The relief sought is specific.

9   *See* Fed. R. Civ. P. 8(a)(3). The relief sought is limited to the relief prayed for in the

10   Complaint. *See* Fed. R. Civ. P. 54(c). And, the relief sought is adequately proven up,

11   as detailed below. Thus, Plaintiff is entitled to the remedies it seeks in its Motion.

12   **1.   Plaintiff Is Entitled to $3,000,000 in Compensatory Damages**

13   Plaintiff's tort claims (Claims 2 and 4-7) are each based on a theory of damages

14   from resultant emotional anguish/distress and personal injuries.[5]

15   A district court has "wide latitude" and discretion to determine the amount of

16   damages to award upon default judgment. *James v. Frame*, 6 F.3d 307, 310 (5th Cir.

17   1993). In cases of "impairment of reputation and standing in the community, personal

18   humiliation, and mental anguish and suffering," compensatory and punitive damages

19   are "not easily quantifiable, and the amount of damages must necessarily be left to the

20   sound discretion of the [trier of fact]." *Diaz v. Oakland Tribune*, 139 Cal.App.3d 118,

21   137 (1983). California has long recognized "[o]ne whose wrongful conduct has

22   rendered difficult the ascertainment of the damages cannot escape liability because the

23   damages could not be measured with exactness." *Blizzard Entm't Inc. v. Ceiling Fan*

24   *Software LLC*, 28 F. Supp. 3d 1006, 1016 (C.D. Cal. 2013).

25   In computing emotional distress and punitive damages at default judgment,

26   district courts commonly "survey[] other cases with similar facts to arrive at an

27   appropriate sum." *Powell v. Blackrock Asset Mgmt., LLC*, No. SACV 11–0517–JST,

28

---

[5]Plaintiff is not pursuing her second claim.

2011 WL 4551450, at *4 (C.D. Cal. Sept. 30, 2011) (citing and following damages award from a Maryland district court case). This includes jury damages awards. *Brantley v. Boyd*, No. C 07–6139 MMC, 2013 WL 3766911, at *8 (N.D. Cal. 2013) (Practice of Ninth Circuit district courts to "compare the damages sought in default judgment to jury awards in similar cases.") (citing, e.g., *Hernandez v. Madrigal*, Case No. 09–cv–0413 MCE (GGH), 2011 WL 6936364 (E.D. Cal. Dec. 30, 2011).

Because Revenge Porn litigation is a newly developing area of tort law characterized by the severity and type of harms to victims, it is especially pertinent to observe damages awards from analogous cases. "[H]arms tied to its vengeful nature--a privacy invasion that [] destroys the victim's relationships with others," cause victims to lose or quit their jobs, endure harassment by strangers and "change their names or alter their appearance . . . Some resort to suicide. Others are stalked, assaulted, or even killed." Adrienne N. Kitchen, THE NEED TO CRIMINALIZE REVENGE PORN: HOW A LAW PROTECTING VICTIMS CAN AVOID RUNNING AFOUL OF THE FIRST AMENDMENT, *90 Chi.-Kent L. Rev.* 247, 249 (2015). Indeed, Ms. Kitchen explains:

> "Revenge porn is potentially even more pernicious and long lasting than real–life harassment [because]: 1) it is difficult if not impossible for victims to engage in self–help or legal remedies; 2) harassers have a wide audience, including some who will join in the harassment; and 3) revenge porn is accessible to almost anyone . . . almost anywhere . . . . [And] although some revenge porn sites no longer exist, new ones continually appear, and the images often appear on dozens of websites; even if one site removes the images they are still available on several others. Ignoring revenge porn does nothing to protect victims because the damage is not tied to how long the images are posted: the damage is the loss of relationships, jobs, opportunities, and self–esteem."

*Id.* 298.

Revenge porn victims, of which upwards of seventy percent are women, are also targets of objectification and scrutiny in the form victim-shaming.[6] Most of all,

---

[6] Lorelei Laird, *Victims are Taking on 'Revenge Porn' Websites for Posting Photos They Didn't Consent To*, A.B.A. J. (Nov. 1, 2013), http://www.abajournal.com/magazine/article/victims_are_taking_on_revenge_porn_ websites_for_posting_photos_they_didnt_c/?utm_source=maestro&utm_ medium=email&utm_campaign=tech_monthly.

perpetrators often act with impunity and without fear of repercussion. Indeed, to understand the pervasiveness of these actions—in contrast to the sparse number of cases that have assessed final judgment on defendants—one needs to look no farther than the growth of the thriving and lucrative cottage industry of revenge porn websites (many of which Plaintiff's Media appeared) "designed specifically to publicly shame, humiliate and degrade the victim." *Id.* at 249.

Plaintiff here has suffered and continues to suffer immensely at the hands of Elam, and she has submitted evidence of her damages. (*See* Doe Dec.). Plaintiff seeks $3,000,000 million in compensatory relief. This amount derives from surveying judgments and verdicts from comparable cases, an expressly appropriate means of computing emotional distress damages at default. *See Powell v. Blackrock Asset Mgmt, supra,* at 4. A sampling of revenge porn judgments and cases involving the type of emotional distress harms as experienced by Plaintiff include the following:

1. *Allen v. Zonis*, 2017 WL 4142046 [2015–2–15656–0] (Wash. Super. 2017): defendant sent explicit media to family, friends, and employers; impersonated on social media accounts that featured the media; distributed media through email accounts impersonating others; jury awarded $3,000,000 for emotional distress.

2. *Wherely v. Dechart*, 2013 WL 6248580 (S.C. Ninth Judicial Cir. 2013) [1311260015]: $2,000,000 bench verdict for emotional distress claims.

3. *Taylor v. Franko*, 2011 WL 2115836 (D. Haw. May 26, 2011) [09–00002 JMS/RLP]: $400,000 bench verdict for emotional distress claims.

4. *Doe v. Hofstetter*, 2012 WL 2319052 (D. Colo. June 13, 2012) [14-14-00459-CV]: $215,000 bench verdict for emotional distress claims.

5. *Leviston v. Jackson III*, 2015 WL 10102428 (N.Y. Sup. 2015) [JVR No. 1602170038]: $1,500,000 jury verdict for emotional distress claims based on explicit video published online.

6. *Diaz v. Oakland Tribune*, 139 Cal. App. 3d 118, 135 (Ct. App. 1983): $250,000 bench verdict for emotional distress based on public humiliation.

The jury verdict in *Allen v. Zonis* should be the most persuasive benchmark, particularly because it is the only revenge porn case against an individual to reach a civil jury in the Ninth Circuit, and only one of two such cases to reach a jury nationwide.[7]

---

[7] In Plaintiff's research, the only other self-styled "revenge porn" civil suit to reach a jury verdict is *Patel v. Hussain*, 485 S.W.3d 153, 173 (Tex. App. 2016), in which the Court of Appeals approved an award of $215,000 for emotional and mental anguish. That case

18

Plaintiff sought a jury trial in this action; assigning greater deference to the amounts granted in bench verdicts creates a perverse incentive for defendants like Elam to evade the courts altogether. Notwithstanding, the verdict in *Zonis* is most appropriate because of the striking similarity in the defendants' maliciousness and calculation, and the pervasiveness of the harassment, humiliation, trauma, and permanent harm wrought upon the victims.

Plaintiff's injuries clearly were severe, as set forth fully in her declaration. (Doe Dec. ¶ 42). Plaintiff's life will never be the same and the evidence, context, pervasiveness of harm she suffered with comparable cases justify her request for compensatory damages. Thus, this Court should award $3,000,000 in compensatory damages to Plaintiff for her respective claims based upon her personal injuries.

2.   **Plaintiff Is Entitled to $3,000,000 in Punitive Damages**

Punitive damages are expressly available by statute under California law for Plaintiff's intentional tort claims (Claims 2, 4, and 7).[8] *See* Cal. Civ. Code § 3294. Where punitive damages are recoverable as a matter of law, the amount of such damages can be established by evidence proven up by an evidentiary hearing or other means. *James v. Frame,* 6 F.3d 307, 310 (9th Cir. 1993). A plaintiff may recover punitive damages against a defendant if she proves by clear and convincing evidence that the defendant acted with malice, oppression, or fraud.

A showing of malice is satisfied where the defendant "acted with the intent to vex, injure, or annoy," or with a "conscious disregard" of the plaintiff's rights or safety. *Diaz v. Oakland Tribune, Inc*., 139 Cal. App. 3d 118, 135 (Ct. App. 1983). A defendant acts with "conscious disregard" when he is "aware of the probable dangerous consequences of [his] conduct" and he "willfully and deliberately fail[s] to

---

involved the uploading of explicit content of the plaintiff to a pornographic website, but nothing further similar to Elam's prolonged campaign.
[8]   In order, online impersonation with intent to cause harm (Cal. Pen. Code. §528.5), intentional infliction of emotional distress, and stalking (Cal. Civ. Code § 1708.7).

avoid those consequences." *Taylor v. Superior Court*, 24 Cal. 3d 890, 901 (1979). n

In *Diaz v. Oakland Tribune*, *supra*, a newspaper columnist published an article exposing a transsexual female college student body president as "no lady" but really a "man." 139 Cal. App. 3d 118, 124 (Ct. App. 1983). The court of appeals upheld the trial court jury's award of punitive damages on the basis that it was reasonable for the jury to infer that the columnist acted with the intent to "outrage or humiliate" plaintiff, or at best, that he published the article with a conscious disregard of the harm it would cause plaintiff. *Id*., at 136.

There is no question Elam acted with malice: he told Plaintiff he intended to make her want to kill herself. Elam's subsequent conduct shows he acted on that intent and his conduct goes well beyond depraved indifference for humanity. Elam launched a calculated attack, by all means at his disposal, to destroy Plaintiff's reputation, social relationships, and future career. His actions also were rooted in fraud: he *actively* and *deliberately* sought to endanger and terrify Plaintiff by pretending he was her and inviting strangers to her house. Elam is indisputably deserving of punishment for his actions, if for nothing else, to discourage further actions like this. Added to all of this, Elam has refused to face this Court and participate in these proceedings, showing an utter defiance for the rule of law and Judiciary.

The Supreme Court has held the reprehensibility of the defendant's conduct is "the most important indicium of the reasonableness of a punitive damages award." *BMW of N. AM., Inc. v. Gore*, 517 U.S. 517 U.S. 559, 575 (1996); *Rode v. Credio*, No. CV-14-02354-PHX-SRB, 2016 WL 5339682, at *7 (D. Ariz. Aug. 3, 2016) (awarding $5,000,000 in punitive damages). Reprehensibility is assessed as greater where harm is "physical as opposed to economic," "the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others," the conduct involved repeated actions rather an isolated event, and "the harm was the result of intentional malice, trickery, or deceit." *Roby v. McKesson Corp*., 47 Cal. 4th 686, 713 (Cal. 2009).

Physical harm encompasses psychological harm. *Yowan Yang v. ActioNet*, *Inc*., No. CV1400792ABPJWX, 2017 WL 2117028, at *15 (C.D. Cal. Jan. 23, 2017) (affirming jury award of $5,000,000 punitive damages award in wrongful termination suit where plaintiff received $2,393,540 in compensatory damages, $1,500,000 of which were for emotional and psychological harm suffering caused by "feelings of shame, loss of self-esteem not related to work, not having an income and in turn not feeling comfortable going out and dating, engaging in other usual activities.").

The second most significant factor in assessing a punitive damages award is its ratio to the compensatory award. *BMW,* 517 U.S. at 576 (finding a punitive damages award 500 times the size of the compensatory amount as excessive). Yet, even a low compensatory award may support a high punitive ratio where "a particularly egregious act has resulted in only a small amount of economic damages" or the monetary value of injuries suffered are difficult to determine. *Id*., at 582.

Given the egregiousness of Elam's actions, the maliciousness with which he acted, and the need to punish and deter him from harming others, Plaintiff's request of $3,000,000 in punitive damages, a 1:1 ratio to the compensatory request, is reasonable and passes Constitutional muster.

### 3.   **Plaintiff is Entitled to $450,000 in Statutory Damages**

Statutory damages are especially appropriate where, as here, a defendant has "failed to mount any defense or to participate in discovery, thereby increasing the difficulty of ascertaining plaintiff's actual damages." *Live Face on Web, LLC v. AZ Metroway, Inc.*, No. 515CV01701CAS-KKX, 2016 WL 4402796, at *6 (C.D. Cal. Aug. 15, 2016) (*quoting Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1101-02 (N.D. Cal. 2003)). "The court has wide discretion in determining the amount of statutory damages to be awarded. . . ." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984). The Copyright Act authorizes statutory damages up to $30,000 for non-willful and up to $150,000 for willful infringements, per work infringed. 17 U.S.C. § 504(c). Empirically, courts have awarded plaintiffs the maximum amount of statutory

1    damages for willful and non-willful infringements. *See Sweet People Apparel, Inc. v.*

2    *Zipper Clothing*, No. CV 12-02759-ODW CWX, 2012 WL 1952842, at *5 (C.D. Cal.

3    May 31, 2012). Also, "[c]ourts frequently infer willfulness where a defendant

4    defaults. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th

5    Cir.2008) ('All factual allegations in the complaint are deemed true, including the

6    allegation of [defendants'] willful infringement. . . .')."

7          Because Elam copied at least one unique image to a website after the effective

8    date of a registration ('755) (*see* Sec. D.1, *supra*), statutory damages are appropriate

9    as to at least one registration. 17 U.S.C. § 412. Further, Elam infringed Plaintiff's

10   copyrights not only by publishing the Media on the specific sites listed in the

11   complaint and set forth in this motion but other sites as well. (FAC, ¶ 30.) Plaintiff's

12   research reflects that her images were, in fact, published on many more websites than

13   she tied specifically to Defendants' conduct. (Doe Dec., ¶ 43, Exh. 28.) Elam's refusal

14   to engage in the litigation deprived Plaintiff of obtaining more evidence from Elam

15   regarding his infringements. If the Court accepts Plaintiff's allegation that Elam

16   published her copyrighted photographs on websites not specifically alleged in the

17   complaint, as Plaintiff's research suggests, then Plaintiff should get statutory damages

18   for infringements of each of her three copyrights. Plus, Elam's intentional

19   infringement is not only shown by unanswered allegations, but also through other

20   evidence of his conduct. (*See generally* Soskin Dec. Exh. 4; FAC ¶ 23).[9] Indeed, when

21   Elam distributed the Media, he knew Plaintiff had the rights to the Media and that he

22   had no permission to copy, distribute, or display any of the Media (*Id.*, Soskin Dec.

23   Exh. 4 Nos. 48, 57, 64, 70, 83, 89; Doe Dec., ¶¶ 13-14). Plaintiff seeks $150,000 per

24   copyright infringed, or a total of $450,000. Such a request is reasonable because it

---

[9] The Copyright Act also permits inferring willfulness because Elam ignored this action. Specifically, the Act provides that, where a copyright infringer provides a domain name registrar false identifying information for a website used in connection with an infringement, the infringement should be presumed willful. 17 U.S.C. § 504(c)(3)(A). Failing to respond to a complaint and participate in a judicial proceeding, as Elam has done here, is analogous to masking one's identity with false information provided to a registrar. Accordingly, the same presumption of willfulness should be applied.

takes into account the partial evidence Plaintiff was able to gather through her own investigation in this action. (Doe Dec., ¶ 43).

### 4.  **Plaintiff Is Entitled to a Permanent Injunction**

Plaintiff seeks a permanent injunction enjoining Defendant from ever again posting or otherwise using the photographs and videos of Plaintiff and from disclosing Plaintiff's name publicly.  A permanent injunction is an appropriate remedy for revenge porn victims at default judgment. *See Doe v. Hofstetter*, 2012 WL 2319052 (D. Colo. June 13, 2012). A plaintiff sufficiently demonstrates the need for a permanent injunction by showing: (1) irreparable harm; (2) that monetary damages are inadequate; (3) that the balance of hardships favors the plaintiff; and (4) that an injunction would benefit the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). These elements are satisfied here.

***Plaintiff Faces Irreparable Harm***.  A permanent injunction is an appropriate remedy when there is a "cognizable danger of a recurrent violation" that goes beyond a "mere possibility." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953). Elam's conduct was not only egregious and the source of Plaintiff's significant and continued suffering, but was maliciously calculated to inflict harm. It is reasonable to anticipate—given his past conduct, including a refusal to participate in this Action— that retaliation from Elam is more than a "mere possibility." Without discounting the prospect that Elam may have been untruthful in claiming to have erased the Media from his possession, it ultimately is impossible for Plaintiff to know that Elam will not republish or cause-to-be-republished the explicit Media in another effort to fulfill his desire to ruin Plaintiff's life without an injunction. The requested injunctive relief is necessary to prevent any further harm to Plaintiff.

Additionally, for the same reasons, Elam should be compelled to provide information related to his tortious actions to prevent further harm to Plaintiff, including the destruction of all of the Media in his possession, and the destruction of all communications he has that contain the Media. Plaintiff will continue to suffer

emotional harm until she knows Elam no longer possesses the Media. Otherwise, Plaintiff will fear Elam's future dissemination and or use of the Media. This injunctive relief constitutes the only means to ensure that the Elam does not inflict any future harm to Plaintiff and is therefore a "necessary remedy" that is "proper in scope." *Sharpe v. Cureton*, 319 F.3d 259, 273 (6th Cir. 2003). Thus, injunction is the only remedy available to Plaintiff to limit future injury. *See id.*

A permanent injunction is also an appropriate remedy in default judgment cases involving copyright infringement. *See Rosen v. Medlin*, No. 2:15–CV–05789–ODW–JC, 2016 WL 1715179, at *3 (C.D. Cal. Apr. 27, 2016) (granting injunction as part of default judgment in a copyright infringement action); *see also eBay*, 547 U.S. at 391. Plaintiff properly alleges and proved relevant injury. She has shown that Elam infringed her exclusive right to copy and distribute the Media protected by the copyright registrations. Thus, she is not merely presuming that harm will result, but she has illustrated with specific evidence how harm actually is resulting from Elam's conduct.

***The Balance of Hardships Favors Plaintiff***.  Plaintiff's emotional distress, anxiety, and fear will continue if the injunction is not granted. While the severity of harm for Plaintiff is great and potentially indefinite, nothing suggests Elam will suffer any harm if injunctive relief is granted.

***Injunctive Relief Serves the Public Interest***.  There is a public interest in redressing injuries resulting from malicious torts. Here, an injunction would protect Plaintiff from severe harm and send a message that Elam's conduct is intolerable; it also would protect her copyright registrations from being further infringed. Without an injunction, Elam would be rewarded for his conduct and ignoring the judicial process, which would be against the public interest because of its precedential effect.

### 5.   <u>Plaintiff Is Entitled to $12,600 in Attorneys Fees and Costs</u>

Pursuant to Local Rule 55-3, when a statute provides for the recovery of reasonable attorneys' fees, those fees shall be calculated according to the fee schedule

provided in the Local Rules. Plaintiff is seeking a judgment of $450,000 under 17 U.S.C. § 505. The fee schedule outlines as the corresponding attorneys fees award: $5,600 plus 2% of the amount over $100,000. Thus, Plaintiff seeks $12,600 in attorneys' fees under the Local Rules.

## V.   <u>CONCLUSION</u>

Plaintiff has established that Elam engaged in a campaign of terrorism intended to cause Plaintiff severe emotional distress and other personal injuries. He infringed Plaintiff's copyrights, impersonated Plaintiff and others online with the express intent to harm Plaintiff, intentionally inflicted emotional distress on Plaintiff, and his conduct amounts to stalking. Since the beginning of this litigation, Elam has not disputed any of this and, in fact, shunned the judicial process, violating this Court's rules and orders. For these and the reasons stated herein, this Court should grant Plaintiff's Motion in its entirety.

Dated: February 16, 2018

By:   _/s/ Peter Soskin_
Seth Gold
Peter Soskin
Samira Torshizi
K&L Gates LLP
(Cyber Civil Rights Legal Project)

_Attorneys for Plaintiff Jane Doe_

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT CASE NO. 2:14–CV–9788 PSG–SS

1

## <u>CERTIFICATE OF SERVICE</u>

2

3   It is certified that on February 16, 2018, a true and correct copy of the foregoing

4 document was electronically filed with the Clerk of the Court using the CM/ECF

5 system which will automatically send notification of such filing to all attorneys of

6 record.

7

8                                     */s/ Peter Soskin*

                                       Peter Soskin

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**[CORRECTED] MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE ANSWER, FOR ENTRY OF DEFAULT, AND FOR MONETARY SANCTIONS**